# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-DP-00750-SCT

*RICKY CHASE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/90 |
| TRIAL JUDGE: | HON. JOE N. PIGOTT |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN WHITE |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY (POST CONVICTION) |
| DISPOSITION: | APPLICATION FOR POST- CONVICTION RELIEF DENIED - 8/7/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/29/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Ricky Chase was convicted in February 1990 of capital murder for the robbery and murder of Elmer Hart outside Hazelhurst in Copiah County. His conviction and death sentence were affirmed by this Court in **Chase v. State**, 645 So.2d 829 (Miss. 1994), *cert. denied*, **Chase v. Mississippi**, 115 S. CT. 2279 (1995). Chase filed his Application for Leave to File Motion to Vacate Judgment and Death Sentence in this Court on July 15, 1996. Chase's Application raises the following issues:

**I. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PRESENT MITIGATION EVIDENCE CONCERNING CHASE'S MENTAL RETARDATION.**

**II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INTRODUCE EVIDENCE OF RETARDATION AT THE SUPPRESSION HEARING OR AT TRIAL TO EXPLAIN CHASE'S PARTICULAR VULNERABILITY TO POLICE COERCION.**

**III. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST FUNDS FOR A BLOOD SPLATTER EXPERT.**

**IV. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO SUBPOENA LESLIE BROWN FOR THE HEARING ON THE MOTION FOR NEW TRIAL, OR, IN THE ALTERNATIVE, TO ASK FOR A CONTINUANCE OF THE HEARING.**

**V. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO PROSECUTORIAL STRIKES AGAINST FEMALES.**

**A. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTION'S EXERCISE OF CHALLENGES, AND THE TRIAL COURT'S UPHOLDING OF THESE CHALLENGES, AGAINST THREE JURORS.**

**B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBTAIN A RULING ON HIS CHALLENGE AGAINST MARY WELCH AND, FURTHERMORE, FOR FAILING TO EXCUSE HER PEREMPTORILY.**

**VI. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE EXCUSAL OF PROSPECTIVE JURORS OUTSIDE THE PRESENCE OF THE JURY.**

**VII. TRIAL COUNSEL WAS INEFFECTIVE IN NOT ONLY FAILING TO OBJECT TO EVIDENCE OF OTHER CRIMES, BUT IN ELICITING EVIDENCEOF OTHER CRIMES .**

**VIII. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO IRRELEVANT EVIDENCE CONCERNING THE VICTIM AND ARGUMENTS CONCERNING THE JURY'S DUTY TO RETURN A DEATH SENTENCE.**

**A. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO VOUCHING BY THE PROSECUTION.**

**B. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO MATTERS OUTSIDE THE RECORD.**

**C. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ELICITATION OF EVIDENCE CONCERNING RELIGION BY THE PROSECUTION.**

**IX. TRIAL COUNSEL WAS INEFFECTIVE IN ARGUING THAT HIS CLIENT WAS GUILTY.**

**X. TRIAL COUNSEL FAILED TO OBJECT TO THE SUBMISSION OF THE "AVOIDING ARREST" AGGRAVATING CIRCUMSTANCE.**

**XI. TRIAL COUNSEL FAILED TO OBJECT TO THE SUBMISSION OF THE "PECUNIARY GAIN" AGGRAVATING CIRCUMSTANCE OR THE LACK OF AN INSTRUCTION DEFINING "CAPITAL MURDER FOR PECUNIARY GAIN" AT TRIAL AND ON APPEAL.**

**XII. TRIAL COUNSEL WAS INEFFECTIVE FOR SUBMISSION OF AN INSTRUCTION ON MITIGATING EVIDENCE.**

**XIII. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO LANGUAGE IN THE LESSER INCLUDED OFFENSE INSTRUCTION WHICH PREVENTED THE JURY FROM GIVING EFFECT TO THAT INSTRUCTION.**

**XIV. THE COURT FAILED TO CONDUCT ITS STATUTORILY REQUIRED SENTENCING REVIEW.**

## STATEMENT OF FACTS

¶2. Ricky Chase and Robert Washington were involved in the robbery of an elderly couple, Doris and Elmer Hart, at their home outside Hazlehurst on August 14, 1989. It was admitted that the two overpowered Mrs. Hart and then took certain items, mostly guns and money, from the home. Chase and Washington each stated that the other was the mastermind of the robbery and each named the other as the one who actually shot and killed Elmer Hart, who came home during the robbery. Washington pled guilty, received a life sentence and testified against Chase.

¶3. Almost all of Ricky Chase's petition is based on allegations of ineffective assistance of trial counsel, Jeffrey Varas and M.A. Bass. The primary authority on this matter is *Strickland v. Washington*, 466 U.S. 668, 687, 688, 689, 690, 691-92, 694 (1984), where the United State Supreme Court provided the following standards:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary

process that renders the result unreliable.

. . . .

Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . .

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

. . . .

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

. . . .

An error by counsel, even if professionally unreasonable, does not warrant setting aside the

judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

. . . .

[In order to prove prejudice] [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(citations omitted).

### I. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PRESENT MITIGATION EVIDENCE CONCERNING CHASE'S MENTAL RETARDATION.

¶4. In November 1989, defense counsel moved in November 1989 to have the circuit court provide funding for an investigator and a clinical psychiatrist/expert to aid the defense. This motion specifically stated:

In anticipation of a potential sentencing trial in the bifurcated proceedings, Defendant requires the services of a qualified clinical psychiatrist to examine the Defendant, his history and record, in order to be fully prepared to testify at trial as to mitigating factors. Substantial evidence exists that is likely to prove the existence of mitigating factors enumerated in Miss. Code Ann. Sec. 99-19-101(6) as well as others not statutorily enumerated.

¶5. The circuit court granted the motion as to the psychiatrist. Chase was eventually examined by Dr. John W. Perry, Jr. of McComb, a psychologist, pursuant to the suggestion of insanity and the circuit court's order of December 8, 1989, for a determination of Chase's sanity at the time of the murder and whether he was competent to stand trial. Chase was also examined by Dr. S. Ray Pate of Jackson, a psychiatrist, pursuant to the circuit court's order of January 16, 1990.

¶6. Dr. Perry's report provided the following under "Test Results and Interpretation":

The WMS was administered first, and the defendant seemed to be performing at his best at this point in the session. He attained an MQ of 99, which is in the average range and indicates that he is not experiencing any problems with recent recall.

He did not perform as well on the WAIS-R, but it was my impression that he was not concentrating as well and perhaps just did not feel like putting forth his best effort. This was particularly evident on the Performance items, where he sat back in his chair and perhaps did not get the best view of the test material. His Full Scale IQ of 71 is in the borderline range. The verbal IQ of 77 is also in the borderline range. The Performance IQ of 64 is in the mildly retarded range, but he did not seem to be performing at his best on these particular tests. There were no indications of a thought disorder of any type in the qualitative aspects of his test responses.

The WRAT-R indicates that the defendant has reading recognition skills at the tenth grade level and spelling skills at the seventh grade level. His arithmetic skills are also at the seventh grade level. These scores are consistent with his educational history and indicate that he is literate.

. . . .

It is my professional opinion that the defendant is competent to stand trial and that at the time of the alleged offense he was capable of distinguishing right from wrong. I do not see a need for further evaluation or treatment of any mental disorder.

¶7. Dr. Pate's report was in the form of a five-page letter to defense counsel. Most of the letter was taken up with a summary of Chase's life. The letter ended:

In summary, this is a man who is charged with extremely serious crimes, and I was asked to do a psychiatric evaluation. Insofar as I can determine at this time he does not have any mental illness and does not give history compatible with having a mental illness at any time in his life. He seems to clearly understand what his charges are, he seems to be able to cooperate well with his attorney, and he seems to understand that the actions that he is charged with were serious crimes.

Chase called neither of these doctors nor did he attempt to introduce either of these reports in the guilt or sentencing phase of his trial.

¶8. Chase now argues that his counsel was ineffective for failure to introduce, in the guilt and sentencing phase, that portion of Dr. Perry's report which indicated mental retardation. Chase cites numerous cases from other jurisdictions where failure to introduce mitigation evidence, particularly concerning mental problems and socioeconomic background in the sentencing phase, was found to be ineffective assistance of counsel. A review of the cases shows that the fact situations presented are much more severe and obvious, and many times show a failure to even investigate the mental problems of the defendant in the first instance. *See Beavers v. Balkcom*, 636 F.2d 114 (5th Cir. 1981)(failure to obtain psychiatric examination of defendant or review of medical records where defendant had been confined twice to mental institution); *Wilson v. Butler*, 813 F.2d 664 (5th Cir. 1987)(failure to investigate mental background of defendant who had suffered from convulsions and was found to be paranoid schizophrenic); *Greer v. Beto*, 379 F.2d 923 (5th Cir. 1967)(failure to introduce medical records where sanity was at issue); *United States v. Fessel*, 531 F.2d 1275 (5th Cir. 1976)(failure to seek psychiatric assistance where defendant had previously been found to be schizophrenic); *Brewer v. Aiken*, 935 F.2d 850 (7th Cir. 1991)(failure to investigate mental history where defendant had undergone shock therapy, suffered brain damage and was alleged to be susceptible to the influence of others); *Cunningham v. Zant*, 928 F.2d 1006 (11th Cir. 1991)(failure to present at sentencing phase evidence of mild retardation, minimal schooling, poverty stricken background and death of father at early age);*Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992)(failure to present psychiatric evidence at sentencing phase where sanity was critical issue, defendant had been victim of child abuse and had engaged in substance abuse, had been found psychotic and family provided funds for independent examination).

¶9. Chase also cites *State v. Tokman*, 564 So.2d 1339 (Miss. 1990), where this Court affirmed the

circuit court's finding that Tokman was entitled to a new sentencing hearing due to ineffective assistance of counsel. However, it is clear that the factual situation in *Tokman* is distinguishable from that presented by Chase. Tokman's counsel spent a total of six hours preparation time for the trial; failed to perform any independent investigation; failed to search for any mitigating evidence beyond a discussion with Tokman's mother; and failed to make sure that Tokman had undergone a psychological examination ordered by the circuit court.

¶10. In a more recent case, *Cole v. State*, 666 So.2d 767 (Miss. 1995), this Court found that counsel was not ineffective despite his failure to further investigate psychological reports which gave some indication that Cole had a low intelligence quotient but did not give the exact figure. This Court found that evidence of Cole's minimal education, illiteracy and deprived childhood was made known to the jury, and under these circumstances there was no error in counsel's actions under *Strickland v. Washington*. *Cole*, 666 So.2d at 776-77.

¶11. In this case there was no evidence presented, nor was it alleged, that Ricky Chase was the victim of child abuse, poverty, substance abuse or mental problems resulting from physical injury or organic disease. Lynn Beall, his elementary school principal, testified during sentencing that he was a "follower" and "would be influenced" by the other children. Chase was raised by his mother and, though Chase's parents had never been married, Chase had frequent contact with his father. There is also no evidence that counsel failed to sufficiently investigate this aspect of Chase's case. Counsel managed to obtain two mental evaluations of Chase, one in specific preparation for the possible sentencing phase of the trial. Counsel presented seven witnesses in the sentencing phase of the trial. These were either family members or people who had contact with Chase through school, church or other social activities. Counsel appeared to be following a strategy of trying to show that there was some good in Chase and that this could serve as justification for sparing his life, instead of trying to show him as a victim. The evidence further showed that Chase had never failed a grade in school, had almost completed the tenth grade before dropping out, and had been a good athlete in high school. One of the mitigating circumstances presented to the jury during sentencing was "whether Ricky Chase was dominated by and under duress from Robert Washington."

¶12. Chase did not raise an insanity defense at trial. Therefore, it does not appear that counsel could be ineffective for failure to introduce the "diminished capacity" evidence in question during the guilt phase. The sentencing phase is another matter. Chase was clearly entitled to present mitigating evidence under Miss. Code Ann. § 99-19-101(6), and under the rule that "basically any evidence bearing on mitigation" is admissible "as long as the evidence is relevant." *Carr v. State*, 655 So.2d 824, 835 (Miss. 1995). Seen in the context of the entire report, Dr. Perry's findings do not seem to be powerful evidence in favor of Chase. They would be probably be even less so if the jury were also made aware of the results of the separate exam of Dr. Pate, specifically requested by Chase. As this omission may be seen a legitimate exercise of trial strategy, this assignment is without merit.

### II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INTRODUCE EVIDENCE OF RETARDATION AT THE SUPPRESSION HEARING OR AT TRIAL TO EXPLAIN CHASE'S PARTICULAR VULNERABILITY TO POLICE COERCION.

¶13. On direct appeal, Ricky Chase raised the following issue: "The trial court erred in allowing the statement of the defendant to be admitted into evidence in violation of the Fifth and Fourteenth

Amendments to the Constitution of the United States as well as Article Three, Sections 14 and 26 of the Mississippi Constitution." This Court held:

> that from a totality of all the circumstances the lower court was well within the realm of substantial evidence in finding that Chase's statement was admissible and not the product of improper inducement. Chase made an intelligent and knowing waiver of his rights. All law enforcement officers' testimony, as well as Ricky Chase's own testimony, constitutes proof that Chase was advised of his constitutional rights, that he understood those rights, and that regardless of Clower's statement to him, Chase voluntarily and without inducement, gave several statements or admissions to law enforcement officers. More importantly, as Chase put it, "I would have told the truth anyway."

*Chase*, 645 So.2d 841-42.

¶14. Chase now argues that his counsel was ineffective for failure to introduce evidence of Chase's retardation, apparently those few lines from Dr. Perry's report, at the suppression hearing or at trial. Chase argues that this evidence would have changed the circuit court's decision on the admission of his statement. Chase cites numerous cases from this and other jurisdictions which deal with confessions in the context of a defendant who may be mentally deficient. The circuit court found that Chase appeared to be of average intelligence and had no trouble reading the rights forms in question. The court also noted that Chase had refused to allow the police to search the car he was driving at the time he was arrested because it didn't belong to him. The circuit court, however, was unaware of the findings of Dr. Perry, at least at the suppression hearing held on November 20, 1989. The circuit court's order which directed the examination of Chase by Dr. Perry was dated and filed December 8, 1989. Dr. Perry's report was dated December 11, 1989. Trial counsel could not have presented this evidence to the circuit court during the suppression hearing because it did not yet exist. Whether counsel could be ineffective for failure to have Chase psychologically evaluated before the suppression hearing was not raised and we do not address it here.

¶15. As for failure to introduce such evidence during trial, because Chase did not raise a plea of insanity, the most logical time for such introduction would have been when the statements in question were introduced. It appears from a review of the record that the two statements in question, S-31 and S-32, were never introduced into evidence at trial, but only for identification. S-31 and S-32 are actually the same statement, with some minor editing done to S-32. This did not prevent the statement from being referred to on several occasions by the witnesses for the State. In his statement, Chase indicates that when he entered the Hart home Mrs. Hart was already tied up and that he participated in none of the ransacking of the house or the killing of Mr. Hart. This differed somewhat from his trial testimony, where he admitted that he had helped Robert Washington tie up Mrs. Hart, that he helped ransack the house, and that he helped carry the guns and money off after the killing. The statement is similar to Chase's trial testimony in that he denied being the person who shot Elmer Hart. Since the statement is not a confession, its value was primarily to impeach Chase. The circuit court was privy to Dr. Perry's report at the time of the trial. We find that counsel was not ineffective for failure to differently use Dr. Perry's report during trial.

### III. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST FUNDS FOR A BLOOD SPLATTER EXPERT.

**¶16.** Defense counsel moved in November 1989 to have the circuit court provide funding for an investigator and a clinical psychiatrist/expert to aid the defense. The circuit court granted the motion as to the psychiatrist, but apparently did not grant funds for an investigator. Ricky Chase now argues that his counsel was ineffective for failure to request funds for a blood splatter expert, as such a person could allegedly have examined the blood on a certain pair of blue jeans introduced into evidence and rendered some kind of opinion as to whether the person who wore the jeans actually fired the fatal shot. Chase attaches an affidavit from Patrick Wojtkiewicz, Director of DNA Research at the North Louisiana Criminalistics Laboratory in Shreveport, which states the following:

> Assuming the jeans worn by Mr. Chase have not deteriorated to a significant degree, an examination of the blood on the jeans may reveal how the blood got on the jeans, i.e. whether the blood is typical of bloodspray from standing within a few feet of the wound when it was made or whether the blood was merely transferred to the jeans by a blood object (including a body, skin or hands) after the gunshot wound was inflicted.

¶17. Chase's argument in this application appears to assume that he was wearing the bloody jeans in question during the shooting. As the State argues in its response, Ricky Chase argued throughout the trial that the jeans in question were not his and he had not worn them the day of the shooting. We find that trial counsel should not be found ineffective for failure to solicit expert testimony which did not support Chase's trial testimony, or to rebut a finding which the jury had not yet made.

### IV. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO SUBPOENA LESLIE BROWN FOR THE HEARING ON THE MOTION FOR NEW TRIAL, OR, IN THE ALTERNATIVE, TO ASK FOR A CONTINUANCE OF THE HEARING.

¶18. On March 12, 1990, Chase filed his motion for new trial. He stated that trial counsel had:

> subsequently learned that at least one of the jurors had a preconceived judgment of the case and as to ultimate outcome as evidenced by the attached affidavit. In addition, this particular juror never responded accordingly upon being questioned at the voir dire and as such counsel for the Defendant never knew that this juror held these biases and Defendant was therefore deprived of a trial by a fair and impartial jury.

The affidavit of Leslie Ridlehoover Brown was attached to the motion. Brown was employed as an attorney for the State Tax Commission at the time of the trial. Another employee of the Tax Commission at that time, Toxie Givens, was married to Mary Givens, who served as a juror in Chase's trial. Brown's affidavit stated in part:

> Givens announced that he had not had any home cooking in three days because his wife was presently sitting on the jury of a capital murder case in Copiah County. He said the defendant was "going to get fried." I stated that it sounded as though he knew the guy were guilty. He replied that the guy was guilty and then reiterated that the guy was going to fry - his wife was going to make sure of it if she got the chance. He stated to the effect that they had talked about it and that they both knew he was guilty and "she's gonna fry him if she gets the chance."

¶19. During the hearing on the motion for new trial, Mary Givens denied that she communicated with her husband during the trial; denied that she had discussed the case with her husband prior to the

beginning of the trial; and denied that she had any fixed opinions about imposing the death penalty before the trial. Toxie Givens's testimony was consistent with that of his wife, and he also denied that he had made the statements contained in Brown's affidavit. Brown did not testify at the motion for new trial. Defense counsel stated that she would not appear voluntarily and he did not attempt to have her subpoenaed. The trial court found that the allegations in Brown's affidavit were meritless and denied this part of the motion for new trial.

¶20. In his petition, Chase alleges that trial counsel was ineffective for failure to have Brown subpoenaed so that she could testify at the hearing on the motion for new trial. Apparently his argument is that if Brown had testified at the hearing, the trial court would have found her more credible than the Givens and would have made the opposite finding. Chase further argues that his right to intelligently use his jury challenges was violated by Givens's false answers, citing **Knox v. Collins**, 928 F.2d 657 (5th Cir. 1991). Chase then cites numerous cases for the general rules that (1) attorneys must have latitude in *voir dire* so that challenges may be exercised in an intelligent manner and (2) prejudice may be shown where a potential juror answers falsely or fails to answer and the attorney can show that he probably would have exercised his challenges differently if not for the false answers.

¶21. The State cites **Leatherwood v. State**, 473 So.2d 964 (Miss. 1985), and **King v. State**, 503 So.2d 271 (Miss. 1987), for the proposition that deference should be given to an attorney's decision to call or not to call a witness, particularly in the context of trial strategy. The Court specifically stated in **Leatherwood**, 473 So.2d at 970, that one valid reason for not calling a witness is that "the witnesses may be unwilling or uncooperative . . . ."

¶22. Under these circumstances we find that counsel was not ineffective for failure to, in effect, force Brown to appear and testify at the hearing on motion for new trial. Where a witness refuses to voluntarily appear and testify, Chase's counsel could have made a conscious strategic decision not to present such a witness, but to proceed solely with her affidavit. We also refuse to find that Brown would have been so persuasive as to shake the trial court's adoption of the unequivocal testimony of the Givens. This issue is without merit.

### A. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO PROSECUTORIAL STRIKES AGAINST FEMALES.

¶23. On direct appeal, Ricky Chase raised the following issue: "The State intentionally struck African-Americans and women from the jury in this case in violation of the Sixth and Fourteenth Amendments to the United States Constitution and state law." This Court considered this issue and made the following ruling:

> On the question of gender-based discrimination, Chase argues that no gender-neutral explanations were offered for peremptory challenges against women. However, no objection was raised by the defense and no such explanation was requested. Chase concedes that the holding in *Batson* has not been applied to gender discrimination. The bigger problem is that Chase did not raise this issue at trial and allow the prosecutor an opportunity to respond or give the trial judge an opportunity to make a ruling or finding of fact. This failure alone insures that this issue cannot be the basis of reversal. Chase's claim of gender-based discrimination in jury selection is procedurally barred on appeal by our rule requiring contemporaneous objection as a

prerequisite to preservation of the issue on appeal.

Alternatively considering this assignment on its merits, Chase also does not make a case for purposeful exclusion of women. The reasons given by the prosecutor for exercising the peremptory challenges on five of the women were not only race neutral, they were also gender neutral. Chase also used seven of his peremptory challenges, more than the prosecution, to exclude women from the jury. Despite the exclusion of women by both sides, the jury panel ultimately consisted of a majority of women. Chase's assignment fails not only for failure to preserve the issue, but also for failure of any supporting proof.

In addition to the other considerations, it should also be pointed out that the prosecutor only used a total of eight peremptory challenges. This considerably weakens any argument by Chase. If the prosecutor were intent on purposeful discrimination based on either race or gender, then the additional challenges could have been used to exclude blacks or women who ultimately served on the jury.

*Chase*, 645 So.2d at 843-44. *Chase* was decided on February 24, 1994. *J.E.B. v. Alabama*, 511 U.S. 127 (1994), which found that the rule of *Batson* was to be applied to gender-based discrimination, was decided on April 19, 1994.

¶24. Chase now argues that trial counsel was ineffective for failure to object the State's peremptory challenges of six females, based not on racial discrimination but on gender discrimination. Chase argues that though *J.E.B. v. Alabama* would not be decided for another four years, "it was altogether reasonable for trial counsel to have been aware of this potential issue especially since the use of peremptory challenges to discriminate on the basis of gender had been held to violate the principles of *Batson* by other courts." Despite trial counsel's lack of foresight, he did obtain on the record findings for five of the six strikes in question, which were all gender neutral. The trial court required no reasons for the strike on Rosemary Cesario, apparently a white female. We hold that trial counsel was not ineffective solely for failure to obtain some gender neutral reasons for the peremptory strike against Cesario.

### B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTION'S EXERCISE OF CHALLENGES, AND THE TRIAL COURT'S UPHOLDING OF THESE CHALLENGES, AGAINST THREE JURORS.

¶25. On direct appeal, Ricky Chase raised the following issue: "The trial court erred in excusing jurors for cause in violation of Mississippi law and the Sixth, Eighth and Fourteenth Amendments to the Federal Constitution." The specific jurors in question were Freddie Jackson, Nellie Tillman and Dena Hall.

As to these potential jurors, this Court found:

Since Chase raised no objection to any of these rulings, his claim is procedurally barred. Without relaxing the bar, this Court also looks to the underlying merits of the claim.

### A. *Freddie Jackson*

The trial court stated that Mrs. Freddie Jackson was excused because of conscientious scruples

against the infliction of the death penalty. Mrs. Freddie Jackson vacillated back and forth, more or less, but she said 'I don't think I could vote for the death penalty under the circumstances . . . . No objection was raised by Chase.

### B. *Nellie Tillman*

Chase devotes two short paragraphs to arguing that Ms. Nellie Tillman was improperly excused as a juror. Chase contends that there is nothing in the record to support excusing this juror for cause. The record indicates otherwise.

While neither the prosecutor nor the judge stated why Ms. Tillman was excused, the record shows that Ms. Tillman knew Chase but stated that she could be impartial. Ms. Tillman was a diabetic and had high blood pressure. She had read about the case in the newspaper and heard it on television and, in addition, she worked with Chase's sister-in-law. Ms. Tillman had a ten year old daughter, the child's father worked on the road as a truck driver, and there was nobody to take care of the child. She indicated that this would definitely weigh heavily on her mind.

As the State noted, this Court in *Billiot v. State*, 454 So.2d 445, 457 (Miss. 1984), stated: "Generally a juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely effect his competency or his impartiality at trial." In this instance, there were several grounds to support the challenge for cause of Ms. Tillman.

### C. *Dena Hall*

Dena Hall was excused pursuant to Miss. Code Ann. § 13-5-1 (1972). This section excludes persons under the age of 21 from jury service. Ms. Hall was nineteen years old. Chase contends that this provision violates the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, §§ 14 and 26 of the Mississippi Constitution.

This Court has previously considered the exclusion of persons under 21 from jury service and has consistently held that the exclusion does not violate the state or federal constitution.

This assignment of error is procedurally barred and, alternatively, without merit.

*Chase*, 645 So.2d 844-45 (citations omitted). The standards used in *Chase* have been followed in more recent capital cases decided by this Court, including *Walker v. State*, 671 So.2d 581 (Miss. 1995); *Jackson v. State*, 672 So.2d 468 (Miss. 1996); and *Taylor v. State*, 672 So.2d 1246 (Miss. 1996). As this Court considered the matter on the merits and found that the jurors were properly excused, we find that trial counsel was not ineffective for failure to object.

### C. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBTAIN A RULING ON HIS CHALLENGE AGAINST MARY WELCH AND, FURTHERMORE, FOR FAILING TO EXCUSE HER PEREMPTORILY.

¶26. On direct appeal, Ricky Chase raised the following issue: "The court's refusal to remove a juror for cause denied Ricky Chase a fair and impartial trial in violation of the Constitution of the United States and the Constitution and law of Mississippi." Mary Welch stated on *voir dire* that she had heard about the case on the news and had been robbed three times. She stated at one moment that

anything might influence her feelings and that it might bother her to sit on the jury "[i]f it was proved that's what they were doing at the time this happened." She then denied that this experience would hamper her ability to be objective and impartial. Trial counsel for Chase challenged Welch for cause. The circuit court made no explicit ruling but did not excuse her. Counsel for Chase then accepted Welch, using his last peremptory challenge on the next person in the venire, Karen L. Boone. The Court found that there was no error in Welch not being excused for cause because her answers were satisfactory, and because defense counsel still could have used a peremptory challenge on her. *Chase*, 645 So.2d at 845-46.

¶27. Chase now argues that his trial counsel was ineffective for failure to obtain a ruling on his challenge for cause, and for failure to preserve the error by using his last remaining peremptory challenge on her. This Court finds that Chase got his ruling; after he made his challenge for cause, Welch remained on the panel, therefore, the challenge was denied. As to the failure to then excuse Welch with a peremptory challenge, the State argues that trial counsel engaged in reasonable trial strategy by using the last peremptory challenge on the next person in the venire, Karen Boone. Considering that Boone's daughter may have been enrolled in a day care center where Elmer Hart's great niece worked; Boone's father was in the Highway Patrol; and Boone's uncle was a murder victim, this certainly could come under the parameters of trial strategy. This issue is without merit.

### VI. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE EXCUSAL OF PROSPECTIVE JURORS OUTSIDE THE PRESENCE OF THE JURY.

¶28. On direct appeal, Ricky Chase raised the following issue: "The trial court erred in excusing jurors following discussions between the court and prospective jurors outside the presence of the defendant." This Court stated, in *Chase*, 645 So.2d at 845, the following:

> The court qualified the prospective jurors pursuant to Miss.Code.Ann. § 13-5-1 (1972), giving the various reasons which would disqualify a person from serving as a juror. Several prospective jurors asked to approach the bench. After off-the-record discussions between the court and these prospective jurors, two panel members, Robert Pleasant and Margaret Knight, were excused. Presumably, the court found that they were barred by statute from jury service.

¶29. This Court found that this issue was procedurally barred for failure to object at the time the prospective jurors were excused or when the jury was impaneled, and was also barred for Chase's failure to present an adequate record on the matter to the Court.

¶30. Chase now argues that his counsel was ineffective for failure to object at the time that these three were excused. Chase cites *Strickland v. State*, 477 So.2d 1347 (Miss. 1985), where this Court reversed a conviction for sale of marijuana when the trial judge, in response to allegations from three prospective jurors that someone had contacted them in an attempt to influence their decision in Strickland's favor, questioned the three in chambers outside the presence of either counsel or Strickland. In reversing this Court found that:

> [t]he defendant has an absolute right to be present during the empaneling of a jury. The examination of these jurors represented an important and crucial stage in the trial proceedings, which mandated the presence of either the defendant or his counsel. . . . [T]he right of the defendant or his counsel to be present at such an examination is paramount.

*Strickland*, 477 So.2d at 1349 (citations omitted); *see also* ***State v. Smith***, 392 S.E.2d 362 (N.C. 1990)(private bench conferences with prospective jurors resulting in excusal amounted to reversible error).

¶31. The State argues first that this issue is procedurally barred, as it was raised and considered by this Court on the merits and found to be meritless, and cannot be raised again here, relabelled as ineffective assistance of counsel. *See **Foster v. State***, 687 So.2d 1124, 1129 (Miss. 1996)("[O]ther issues which were either presented through direct appeal or could have been presented on direct appeal or at trial are procedurally barred and cannot be relitigated under the guise of poor representation by counsel.")

¶32. On the merits of the issue, the State argues first that ***Strickland*** is inapplicable to the situation in this case, that statutory jury qualification is not comparable to determining whether prospective jurors have been unduly influenced. The State also argues that defense counsel approached the bench during these proceedings and must be presumed to have known what was happening. Actually, Counsel Varas did not approach until after Robert Pleasant had been excused, and there is nothing in the record showing when Margaret Knight approached the bench, only that she was excused, so it is unknown as to whether Varas was privy to communications concerning Knight.

¶33. In addition, the State argues the circuit court did not err in its actions and therefore counsel cannot be found to be ineffective for failing to object, in that statutory disqualification under § 13-5-1 was a purely legal matter and not a critical stage of the proceedings. In ***Mack v. State***, 650 So.2d 1289, 1307 (Miss. 1994), (*quoting **Kentucky v. Stincer**, 482 U.S. 730, 745 (1987)*), this Court stated that "a criminal defendant 'is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" Mack had voluntarily absented himself from the courtroom during a pretrial conference on jury instructions. This Court relied on this voluntary absence, without request for continuance, and its finding that a conference on jury instructions dealt with legal issues to find that Mack's presence was not constitutionally required. *Mack*, 650 So.2d at 1307. The State also cites ***Taylor v. State***, 672 So.2d 1246, 1263 (Miss. 1996), where the circuit clerk, with the circuit court's knowledge, excused potential jurors for numerous reasons, including age. This was found to be proper procedure. We find that Chase has failed to show that he was prejudiced or that confidence in this trial may be undermined because of defense counsel's failure to object or prevent the procedure complained of here.

### VII. TRIAL COUNSEL WAS INEFFECTIVE IN NOT ONLY FAILING TO OBJECT TO EVIDENCE OF OTHER CRIMES, BUT IN ELICITING OTHER EVIDENCE OF OTHER CRIMES .

¶**34.** On direct appeal, Ricky Chase raised the following issue: "The admission evidence of other crimes or bad acts evidence violated Chase's rights pursuant to Mississippi law and the Eighth and Fourteenth Amendments to the Constitution of the United States." This Court stated, in ***Chase***, 645 So.2d at 850:

> Chase correctly states the rules on evidence of other crimes. . . . The problem is that the testimony in controversy concerned crimes committed by Robert Washington or was testimony

elicited by defense counsel. Chase's counsel was apparently trying to show that Washington had a history of criminal behavior and therefore was acting in conformity with his past.

This Court found that this issue was procedurally barred for failure to object at the time the evidence was elicited, and was also not reversible error on the merits.

¶35. Chase now complains that his counsel was ineffective for failing to object to evidence of other crimes he may have been involved in, or in some cases having elicited such evidence. When Jeffrey Varas was cross-examining Robert Washington, he was attempting to show that Washington was lying when he said that he wasn't the mastermind behind the murder because he wouldn't do something like this, particularly to his neighbors. Varas questioned Washington about whether he had burglarized the homes of other neighbors, and Washington stated that "[t]he man up the road from me, me and Ricky went in his house. Lady across the street from me." Chase next complains that during the State's examination of witness Bob Clower, a Copiah County Sheriff's Deputy, the State elicited testimony without objection concerning Chase riding around with law enforcement officials after the crime and pointing out where various pieces of evidence had been hidden or buried. Clower stated that "[a]fter that we rode around and Ricky was going to take us and show us where Robert threw out a cash register. That was off 51 Highway over there on Damascus Road." Apparently it had nothing to do with this case; Clower stated that it "was just something he said that Robert went in a place of business here in Hazlehurst, and we picked it up on the way back to the Sheriff's Office." Finally, during the State's cross-examination of Chase, the State used this information in pointing out, without objection, that Chase had received information about burglaries that he had not revealed to the authorities.

¶36. Chase cites numerous cases for the well-settled rule that evidence of crimes other than the one(s) for which the defendant is on trial is generally not admissible. The State argues once again that this issue is procedurally barred, as it is in effect the same issue as the one raised on direct appeal, but recast in terms of ineffective assistance of counsel.

¶37. Chase admitted from the first that he had gone into the house with Robert Washington, but that it was Washington's intent to rob the Harts, not his, and that Washington fired the shot that killed Elmer Hart. Allowing the jury to know that Chase had engaged in some petty thievery is not out of line with a strategy intending to show that it was not credible to claim, as the State did, that Chase, the petty thief, had suddenly become a murderer, while Washington, the one who was prone to violence, was not. In addition, at least some of this evidence was introduced in the context of Chase cooperating with the police. We find that the failure of Chase's trial counsel to object to this evidence does not amount to ineffective assistance of counsel.

### VIII. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO IRRELEVANT EVIDENCE CONCERNING THE VICTIM AND ARGUMENTS CONCERNING THE JURY'S DUTY TO RETURN A DEATH SENTENCE.

#### Guilt Phase

¶38. On direct appeal, Ricky Chase raised the following issue, which dealt with the guilt phase of his trial: "The admission of gruesome photographs of the deceased violated Rule 403 of the Mississippi Rules of Evidence and the State and Federal Constitutions." Chase also raised the following issue

concerning the sentencing phase of his trial: "[T]he prosecutor improperly questioned witnesses concerning Mrs. Hart's condition after the murder and introduced pictures of Mrs. Hart which allegedly lacked relevance. This is characterized by Chase as an 'attempt to elicit sympathy for the victim and his family.'" As to photographs of Mr. Hart, the Court noted that one in question had been objected to by defense counsel and one had not, but the photographs were substantially the same and any argument could apply to both. This Court reviewed the law on the subject and the few cases where such an objection had resulted in reversal:

> The photographs show the position of the body of Elmer Hart lying on the bedroom floor with his pants pockets pulled out. Neither photograph shows the fatal head wound, unusually large amounts of blood or anything approaching gruesomeness. By comparison to most photographs admitted in murder cases, these photographs are relatively mild. Further, these photographs were of significant probative value. Washington testified that after Chase shot Mr. Hart, Chase went through Hart's pockets. There is also evidence of blood splattered on the wall which is important regarding the blood stains found on the blue jeans belonging to Chase recovered from the bag of clothes.

*Chase*, 645 So.2d at 849. Finding the photographs highly probative and relevant, this Court found no error in their admission.

¶39. As to the sentencing phase argument, the Court stated:

> Clearly, there was no error in allowing witnesses to testify as to what they observed when arriving at the murder site. Chase does not support his argument with any authority. Chase further fails to note that Mrs. Hart was a material witness to the events of August 14 and also a victim of physical abuse by Chase and Washington. There was no objection raised to the testimony or to the photographs of Doris Hart. In fact, defense counsel was asked if there was any objection to admission of the photographs and responded, "No, sir, not to this particular photograph," and "No, sir." Argument on this comes too late and is totally without merit.

*Chase*, 645 So.2d at 853-54.

¶40. Chase now argues on post-conviction relief that trial counsel was ineffective for failure to object to the introduction of a photograph of the Hart house; failure to have the arguments concerning introduction of photographs of Elmer Hart's body transcribed; and failure to object to the State using the photographs of Hart's body when confronting Chase's witnesses during sentencing phase about what Chase had allegedly done. Chase cites **Hance v. Zant**, 696 F.2d 940 (11th. Cir. 1983), *overruled on other grounds by* **Brooks v. Kemp**, 762 F.2d 1383 (11th Cir. 1985), where the Court of Appeals vacated a death sentence due to prosecutorial misconduct and exclusion of jurors in violation of **Witherspoon v. Illinois**. In **Hance**, the prosecutorial misconduct at fault was argument to the jury during the sentencing phase. During the guilt phase, the prosecution introduced into evidence numerous photographs of the victim's mutilated and largely decomposed body, along with fragments of her corpse. The Court of Appeals found that this guilt phase conduct was "improper, but . . . not unconstitutional." **Hance**, 696 F.2d at 951.

¶41. The State argues that this issue is barred as another instance of Chase taking an issue decided against him on the merits and recasting it as ineffective assistance of counsel. Otherwise, the State

argues that since this Court found, on the merits, that the photographs in question were properly admitted, then trial counsel's performance cannot be said to be deficient, the first prong of the applicable test under *Strickland v. Washington*. We find that trial counsel was not ineffective for failure to object to the photograph of the Hart house. As to the photographs of Mr. Hart, the law is well settled in this jurisdiction and the few times this Court has ever reversed due to admission of gruesome pictures reveals that this would have been a futile objection, whether argument was preserved on the record or not. It is hard to see how using the photographs during Robert Washington's testimony would have further inflamed the jury, as they would have them as exhibits during deliberations anyway. The same can be said for the use of the photographs during sentencing phase, and Chase cites no authority that such use is improper.

¶42. Chase makes the same argument concerning photographs of and testimony concerning Mrs. Hart. As this Court has found that photographs and testimony were properly admitted due to Mrs. Hart being a material witness to the events surrounding the murder, we find that this issue is without merit.

## Sentencing Phase

¶43. Chase next argues that his counsel was ineffective for failure to object to a portion of the State's closing argument during the sentencing phase. Chase argues that the State erred in arguing concerning Elmer Hart, his family and the effect his death had and would have and in arguing that the jury's decision had some general societal impact beyond this specific case and that his counsel should have objected to this argument. In considering his appeal on the merits, this Court considered some of the same arguments presented here and stated:

> The legal authority cited by Chase does nothing to support his argument. This was not a case where the prosecution introduced evidence of the character or reputation of the deceased or other evidence outside the aggravating circumstances. In *Williams v. State*, 522 So.2d 201, 209 (Miss. 1988), the Court, despite cautioning prosecutors against making such arguments, declined to reverse based on arguments of the prosecution in summation.

*Chase*, 645 So.2d at 854 (citations omitted).

¶44. Chase now raises the same argument, rephrasing it as ineffective assistance of counsel, and once again cites *Williams v. State* as authority.

¶45. This Court has recently reaffirmed its opposition to the "send a message" argument to jurors, but has not as yet found it to be reversible error per se. *Hunter v. State*, 684 So.2d 625 (Miss. 1996) (Sullivan and McRae, JJ., dissenting in part). In this case the State never used the words "send a message." The State did say that the Harts and the surrounding community would be affected by the jury's decision. The State never said that the jury had a duty to return a verdict of death or compared voting or a military oath to a promise to return the death penalty. Rather, the State argued: "Ladies and gentlemen, you people on the jury have taken an oath to uphold the law and follow the law. If I have not proven to you during the last three days that Ricky Chase was the one that actually fired the fatal shot that killed Mr. Hart, then return a life verdict. You will be required to." The State then went on to argue that the evidence showed the opposite, and the jury should return a death verdict. None of the authority cited by Chase suggests that this argument was outside the wide range

normally allowed by this Court. We find that the State's closing argument in this case did not lessen the jury's sense of responsibility; one can as easily assume that it increased it.

¶46. In addition Chase argues that the State is restricted in its proof and argument to the statutory aggravating circumstances only. Actually, the restriction is applicable only to proof or evidence. Since argument is not evidence, this objection is without merit.

¶47. Chase appears to argue that the statements in question were in part a victim impact statement, and therefore improper. This Court found in *Hansen v. State*, 592 So.2d 114 (Miss. 1991), and in numerous cases since, that such argument is not prohibited pursuant to the U.S. Supreme Court's holding in *Payne v. Tennessee*, 501 U.S. 808 (1991). We find that counsel was not ineffective for failure to object to this argument.

### A. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO VOUCHING BY THE PROSECUTION.

¶48. In this one issue under the complaint of vouching, Chase appears to combine two issues which were considered by this Court in the direct appeal. This Court first stated:

> Chase also argues that the prosecutor improperly expressed his personal opinion as to his guilt in voir dire and during closing arguments. Once again, there was no objection raised to any of these statements and any argument is now procedurally barred.
>
> . . . .
>
> The comments by the prosecutor were based on matters in evidence. During closing argument, the prosecutor, as well as defense counsel, may comment on facts in evidence and may draw proper deductions from those facts. *Joh nson v. State*, 416 So.2d 383, 391 (Miss. 1982). In *Nixon v. State*, 533 So.2d 1078, 1100 (Miss. 1987) this Court warned prosecutors to "refrain from interjecting personal beliefs into presentation of their cases." Hard blows are permissible; foul blows are not. *Id.* As was the case in *Nixon*, the comments by the prosecutor in this current case are neither hard nor foul. Even if there had been an objection raised, the comments were within permissible bounds.

*Chase*, 645 So.2d at 854-55. In making this ruling the Court mentioned all the instances cited by Chase except the prosecutor's comment concerning the belief that the killer of Elmer Hart was wearing a certain pair of jeans and the comment, during closing arguments in the guilt phase, that he had "never seen a more compelling case of guilt than this case."

¶49. In addition, this Court made the following ruling concerning comments made by the prosecutor made concerning certain State witnesses:

> Chase's next argument is that the prosecution bolstered the testimony of witnesses and "elicited the evidence concerning the polygraph" taken by Robert Washington. There was no objection to any of this alleged bolstering and the argument is procedurally barred.
>
> . . . .

Washington's testimony that he had taken a polygraph came during questioning by the prosecution, but his testimony and apparently the polygraph are concerning an unrelated killing of which Washington was accused. This questioning was a follow up on questioning by defense counsel. Asking the additional question of where the testing occurred does not particularly bolster Washington's testimony.

. . . .

As previously discussed, the prosecutor is allowed some leeway in discussion of the evidence in closing argument. Looking at *Stringer v. State*, 500 So.2d 928, 935-936 (Miss. 1986), this does not amount to improper vouching in this case.

*Chase*, 645 So.2d at 855.

¶50. Chase cites numerous cases from the federal courts and other jurisdictions that hold that the prosecutor may not state his opinion that the defendant is guilty or the evidence shows guilt. Even if these cases were applicable, in only two did the respective court find error so serious as to be reversible. In *Quinlivan v. State*, 579 So.2d 1386, 1387 (Ala.Crim.App. 1991), a manslaughter conviction was reversed where the prosecutor argued that he didn't have to try every case that was brought to him, just the guilty ones. In *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir. 1989), the prosecutor went far beyond anything presented in this case as to a personal belief as to the propriety of the death penalty and several other areas. We specifically rejected any error here on the merits even if an objection had been raised, and find that failure to object did amount to ineffective assistance of counsel.

¶51. As for the testimony concerning the polygraph test and the argument concerning Mrs. Hart and Terry Washington, Chase cites *Stringer v. State*, 500 So.2d 928 (Miss. 1986), which this Court cited in finding no reversible error in prosecutor's argument on the merits; *United States v. Roberts*, 618 F.2d 530 (9th Cir. 1980), where the Ninth Circuit reversed where the prosecution stated that a policeman could corroborate a witness's testimony and was in the courtroom monitoring the testimony for fidelity to the witness's plea agreement; *Mattox v. State*, 240 Miss. 544, 128 So.2d 368 (1961), where this Court reversed where the principal prosecution witness stated that she had taken and passed a polygraph test; and *Commonwealth v. Smith*, 567 A.2d 1080 (Pa.Super.1989), where the court reversed where an expert in a child abuse case gave an opinion concerning the seven year-old victim's character for telling the truth. Despite these cases, this Court, after consideration of this testimony, found no improper vouching. There was no deficient performance by failure to object and no violation under *Strickland v. Washington*.

### B. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO MATTERS OUTSIDE THE RECORD.

¶52. In closing argument in the guilt phase, the prosecutor was attempting to connect a pair of shoes and a pair of jeans with Chase because of the argument that the blood on the clothes was proof that the person wearing them fired the fatal shot. Counsel for Chase objected, stating that there had been no evidence connecting these items with Chase. The circuit court stated that argument was allowed on "anything that may have occurred based upon the evidence."

¶53. Chase argues the well-settled rule that counsel should not argue facts that lack support in the record. However, it is also well settled that counsel can suggest evidentiary conclusions that may be supported by expert testimony or that may be within the common sense abilities of the jury. Such was the case here where counsel argued that the person who fired the shot that killed Elmer Hart would have his blood splattered on his clothes. We find that counsel was not ineffective for failure to object to the specific argument quoted here, particularly where he had already previously objected to the same or similar argument.

### C. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ELICITATION OF EVIDENCE CONCERNING RELIGION BY THE PROSECUTION.

¶54. During the sentencing hearing Ricky Chase called Jackie Alton. Ms. Alton testified that she went to church with Ricky Chase, that he attended regularly "'till he go [sic] on up in age," that "[a]s far as I know he's a nice young man," and that he grew up in the teachings of the church. On cross-examination, the prosecution showed Ms. Alton a photograph of Elmer Hart's body, and Alton agreed that the person responsible was an evil person under the teachings of her church and if Chase had done it, then she might not have known him as well as she had thought.

¶55. Chase now argues that his trial counsel was ineffective for failure to object to the cross-examination. Chase cites numerous cases from other jurisdictions involving prosecutors making religion-based arguments. He makes the argument that "[c]ross-examination on religious issues is improper unless an issue exists where the defendant has sought to use religion to bolster his position and the purpose of the cross-examination is to impeach the credibility of the witness." We find that this is exactly the situation presented here, except that Chase's credibility was impeached through that of his witness. Chase attempted to use religion to help his case and cannot complain when it was in turn used against him. Under this Court's ruling in *Turner v. State*, 573 So.2d 657, 671 (Miss. 1990) (Christian burial reference in cross-examination and closing argument not error where defense also employed religion), counsel was not ineffective here for failure to object to the cross-examination at issue.

### IX. TRIAL COUNSEL WAS INEFFECTIVE IN ARGUING THAT HIS CLIENT WAS GUILTY.

¶56. On closing argument in the guilt phase counsel for Chase stated:

Ricky Chase is here to face his punishment and he's expecting to be punished, but I don't think he should be put to death, and I don't want him to be put to death because I don't believe that he's the one that killed Mr. Hart.

. . . .

As I stated, a lot of this physical evidence is undisputed, but there's none of it -- none of it puts Mr. Chase as the murderer. I am not really arguing that this man is an innocent man here today. I think as far as his guilt, I think you won't have much problem with determining that hey, he is guilty, but the extent of his guilt. Is he as guilty as Robert Washington. Is he the murderer. And until you can say he is the murderer, I don't think he should be facing the death penalty, and I

don't think there is sufficient evidence here today to show that he is the murderer.

It is clear that even though this was closing argument in the guilt phase, counsel for Chase was directing all his energies to the penalty aspect of the trial. Chase now argues that his counsel was ineffective for making this argument, calling it a concession of guilt.

¶57. In *Woodward v. State*, 635 So.2d 805, 808-09 (Miss. 1993), a similar question arose, and this Court found:

> We choose to discuss only Woodward's allegation that his attorney admitted his guilt of the crime. In fact, the attorney admitted that Woodward was guilty of simple murder, not capital murder, and submitted a lesser-included offense instruction in accordance with the argument. The argument was that Woodward was guilty only of simple murder since his confession indicated that he shot the victim after the completion of the rape and while he was leaving the scene and that; therefore, the murder did not occur during the commission of the felony.

> This Court has faced similar allegations in other cases, and found that the attorney's strategic decision to admit to a lesser crime than that charged in the indictment did not amount to deficient performance. In a very similar case to the one at bar, *Wiley v. State*, 517 So.2d 1373 (Miss. 1987), *cert. denied* 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988), an attorney admitted in his opening statement that he thought the jury would find that his client shot the victim. The attorney's theory was that the shooting was not capital murder as charged in the indictment. Although this Court was concerned with this strategy and stressed the point that an attorney is not to stipulate to facts amounting to a guilty plea, this Court, nevertheless found that the attorney had made a strategic decision which did not amount to deficient performance. *Id.* at 1382.

> Even more similar is *Faraga v. State*, 514 So.2d 295 (Miss. 1987), *cert. denied* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 894 (1988), where the defense counsel admitted the defendant had committed simple murder in a capital murder case and submitted an instruction in accordance with his admission. This Court in *Faraga* was also concerned about the attorney's admitting too much, but found the decision tactical and made in order to gain the jury's confidence and to attempt to mitigate the sentence. This Court found that argument "the best argument he could make given the circumstances under which he found his client." 514 So.2d at 308.

> In the instant case, these attorneys similarly could not do much at the guilt phase of this trial. The evidence of guilt was overwhelming. In addition to separate written and videotaped confessions, which were properly admitted, the State presented a mountain of evidence. A housewife near the scene of the crime saw a white logging truck stopped in front of her house and a white man forcing a blonde woman in a yellow dress into his truck. After the truck drove off, the housewife found the victim's car on the highway, with the door open and the motor still running. A motorist reported to law enforcement officers that he saw a white logging truck moving away from a car with an open door on the highway. Woodward unquestionably was in the area that day, driving his white logging truck. His white logging truck was the only white logging truck at the logging mill. Law enforcement found a fountain pen at the crime scene matching pens found in Woodward's truck. Tests of Woodward's blood showed that he could

not be excluded as the perpetrator. On the evidence presented, it is impossible to imagine a Mississippi jury that would not have convicted Woodward. He was "hopelessly guilty." *Caldwell v. State*, 481 So.2d 850 (Miss. 1985)(remanded on other grounds, *Caldwell v. State*, 479 U.S. 1075, 107 S.Ct. 1269, 94 L.Ed.2d 130 (1987).

Assuming for the sake of argument that Woodward's counsel was deficient in the guilt phase, he, in order to prevail on an ineffective assistance of counsel claim, must also show that the result of the guilt phase would have been different. The proof in the case does not present reasonable probability sufficient to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, Woodward cannot show that he fulfills the prejudice prong of the *Strickland* test as to the guilt phase.

¶58. This case presents a somewhat different situation than *Woodward*, in that the jury was instructed that it could consider capital murder, murder and manslaughter as to Ricky Chase. This case most strongly resembles the situation presented in *Wiley*, where there was only an instruction on capital murder and the only vote could be guilty or not guilty on that single issue. Counsel mentioned in his opening statement that he had knowledge of the State's proof and felt "fairly certain based on the proof that the State is going to offer, that ya'll are going to return a verdict of guilty." *Wiley*, 517 So.2d at 1382. This Court concluded that was trial strategy and "fell into the permitted range of reasonable professional assistance under the facts of this case and the standards set forth in *Strickland v. Washington, supra*, and as guaranteed to the Mississippi and Federal Constitutions." *Wiley*, 517 So.2d at 1382-83.

¶59. Ricky Chase testified that he helped tie up Mrs. Hart; that he helped Robert Washington pull over a sofa looking for guns and/or money; that he helped Robert Washington take a rifle out of a case; that he hid in the bathroom with Robert Washington when Elmer Hart entered the bedroom in question; that after Elmer Hart was shot Chase took the car keys and went and got Washington's car; and that he helped Washington load the stolen guns into the car. Even if one believes that Washington pulled the trigger, then by his own testimony Ricky Chase was present, aiding, abetting, assisting, encouraging and doing some overt act in assisting in the murder of Elmer Hart. Under *Wiley,* we find that counsel's argument was not improper and Chase's claim on this issue fails.

### X. TRIAL COUNSEL FAILED TO OBJECT TO THE SUBMISSION OF THE "AVOIDING ARREST" AGGRAVATING CIRCUMSTANCE.

¶60. Ricky Chase raised the following issue during his direct appeal on the merits: "The submission of the avoiding arrest circumstance violated Mississippi law, Article III, Section 14 of the Mississippi Constitution, and the Eighth and Fourteenth Amendments to the Constitution of the United States." This Court discussed Chase's failure to object to this instruction at trial, his arguments concerning the instruction on appeal, and the facts in the record which supported the instruction. This Court stated:

This Court in *Hansen v. State*, 592 So.2d 114, 152-53 (Miss. 1991) addressed this issue of avoiding arrest or covering one's tracks, where the Court found, "Hansen next takes issue with the aggravating circumstance found in Miss Code Ann. § 99-19-101(5)(e)(Supp. 1987)." The Court stated:

"The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or

effecting an escape from custody." It is argued some sort of limiting instruction need be given to narrow this aggravator. In *Leatherwood v. State*, 435 So.2d 645, 651 (Miss. 1983), we rebuffed this contention, stating:

Each case must be decided on its own peculiar facts. If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killings or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

This Court in *Hansen*, further stated:

Under this construction the Court properly submits this aggravator to the jury, if evidence existed from which the jury could reasonably infer that concealing the killer's identity, or covering the killer's tracks to avoid apprehension and arrest, was a substantial reason for the killing.

The cases above clearly indicate that the key to resolving this question of avoidance of arrest lies squarely on whether or not evidence existed within the record which would have allowed the jury to make reasonable inferences therefrom that the concealing of Chase's identity, and the covering of his tracks in order to avoid detection, apprehension and arrest, was a substantial reason for killing Elmer Hart. We are convinced that substantial and sufficient evidence does exist to support the giving of the instruction and for the jury's reliance thereupon in its sentence of death for Chase.

*Chase*, 645 So.2d at 857-58.

¶61. Chase now argues that his counsel was ineffective for failure to object to this instruction. The State argues once again that Chase is attempting to re-argue an issue raised and decided on direct appeal, but rephrased as ineffective assistance of counsel. Chase cites several cases from this jurisdiction and others on two primary points: first, that failure to object to an improper instruction could amount to ineffective assistance of counsel; and two, the law in this State concerning when the "avoiding lawful arrest" instruction is appropriate. As the State points out, this Court considered some of the same authority when finding that this claim was meritless on direct appeal. This issue is without merit.

### XI. TRIAL COUNSEL FAILED TO OBJECT TO THE SUBMISSION OF THE "PECUNIARY GAIN" AGGRAVATING CIRCUMSTANCE OR THE LACK OF AN INSTRUCTION DEFINING "CAPITAL MURDER FOR PECUNIARY GAIN" AT TRIAL AND ON APPEAL.

¶62. Ricky Chase raised the following issues during his direct appeal on the merits:

The trial court erred in allowing the jury to consider the "pecuniary gain" aggravating circumstance.

The submission of the "robbery" aggravating circumstance at the sentencing phase of Ricky Chase's trial violated the Eighth and Fourteenth Amendments to the Constitution of the United

States and Article 3 § 28 of the Constitution of 1890.

¶63. This Court noted that Chase failed to object to these aggravating factors at trial and did not raise the issue(s) in his post-trial motions. The Court added:

> Chase conveniently omitted reference to the prospective nature of the decision [*Willie v. State*, 585 So.2d 660 (Miss. 1991)]. *Willie* was decided on July 24, 1991 after the trial in this cause concluded in February 28, 1990. In *Jenkins v. State*, 607 So.2d 1171, 1182-83 (Miss. 1992), this Court reaffirmed its holding in *Willie*. Jenkins' conviction and sentence were both reversed on other grounds, and any suggestion that *Jenkins* changed *Willie* is erroneous. The prohibition of *Willie* still applies prospectively to those cases tried after that case was decided.
>
> . . . .
>
> In the present case, the right Chase asserts is the right not to have the two aggravators given to the jury. There is no need to relax the procedural bar and the bar independently is basis for rejecting this assignment.

*Chase*, 645 So.2d at 859.

¶64. In *Willie*, 585 So.2d at 680-81 (citations omitted), this Court found, as to the robbery aggravator and the pecuniary gain aggravator,

> [n]ot only should the two aggravators not be given as separate and independent aggravators when they essentially comprise one, they may not be given. When life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind underlying felony as separate aggravators. . . . This decision is to be prospective and will take effect from this date forward.

¶65. Chase now argues that trial counsel was ineffective for failure to object to the submission of the pecuniary gain aggravator. As *Willie* had not yet been decided when Chase's trial took place, we find that his counsel could not be found to be ineffective for failure to anticipate this change in the law.

### XII. TRIAL COUNSEL FAILED TO OBJECT TO THE LACK OF AN INSTRUCTION DEFINING "CAPITAL MURDER FOR PECUNIARY GAIN" AT TRIAL AND ON APPEAL.

¶66. This issue is very similar to the previous issue. Despite the language of the issue which speaks of a limiting *instruction*, Chase, throughout this issue, argues that the pecuniary gain aggravator should be given a limiting *construction*. Apparently this proposed construction means that the pecuniary gain aggravator should only be given in cases involving murder for hire, or murder of an insured by a beneficiary or murder of a testator by a legatee or devisee. Much of the authority from other jurisdictions cited by Chase has adopted such an interpretation. Chase also cites *Maynard v. Cartwright*, 486 U.S. 356 (1988), and *Godfrey v. Georgia*, 446 U.S. 420 (1980), for the proposition that the aggravating factor in question is vague; however, both of these cases dealt with the "especially heinous, atrocious and cruel" aggravator, or something similar. As was stated in the previous issue, this Court has found that in felony murder cases based on robbery the pecuniary gain aggravator should not also be given. As the State argues, this Court in *Carr v. State*, 655 So.2d 824

(Miss. 1995), found that there was no reversible error when the pecuniary gain aggravator was submitted without a limiting instruction. In *Foster v. State*, 639 So.2d 1263 (Miss. 1994), the merits of the issue were not reached because of (1) failure of Foster to make a sufficient objection to the instruction in question and (2) prospective application of *Willie v. State*. We once again find that counsel for Chase, under the status of the law at the time of his trial, was not ineffective for failure to object to this instruction or to submit some instruction which would have narrowed its definition.

### XIII. TRIAL COUNSEL WAS INEFFECTIVE FOR SUBMISSION OF AN INSTRUCTION ON MITIGATING EVIDENCE.

¶67. Ricky Chase raised the following issue during his direct appeal on the merits: "The instructions given Ricky Chase's jury impermissibly limited the consideration of mitigation evidence." This Court stated first as to one instruction, D-38:

> The court instructed the jury in Jury Instruction D-38 as follows:

> The Court instructs the jury that a mitigating circumstance does not have to be proved beyond a reasonable doubt to exist. You must find that a mitigating circumstance exists if there is any substantial evidence to support it.

> Chase contends that the jury should not be limited to "substantial evidence," but Chase was the party submitting this instruction. His complaint should not be considered.

*Chase*, 645 So.2d at 859.

¶68. Chase now argues that his counsel was ineffective for submitting this instruction as the "substantial" apparently should properly have been deleted or replaced by "any". Chase cites ***Boyde v. California***, 494 U.S. 370, 377-78 (1990), for the proposition that "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." Boyde attacked California's statutes concerning mitigating factors, stating that the statutes did not allow for jury consideration of "non-crime-related factors, such as his background and character, which might provide a basis for a sentence less than death." ***Boyde***, 494 U.S. at 378. The Supreme Court adopted the following standard:

> The claim is that the instruction is ambiguous and therefore subject to an erroneous interpretation. We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction, a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such an inhibition. This "reasonable likelihood" standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical "reasonable" juror could or might have interpreted the instruction. There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong policy against retrials years after the first trial when the claimed error amounts to no more than speculation. Jurors do not sit in solitary isolation booths parsing instructions for subtle shades

of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde*, 494 U.S. at 380-81. The Supreme Court found that the instruction in question did not lead the jury to believe that it could ignore Boyde's background and character evidence in mitigation.

¶69. The State cites numerous other instructions which also dealt with mitigating circumstances in an all-inclusive manner and did not include the "substantial evidence" standard. The question is whether there is a reasonable likelihood that the jury, because of the word "substantial" in Instruction D-38, refused to consider relevant mitigation evidence. We find that this reasonable likelihood has not been met, and that Chase's trial counsel was not ineffective solely because of the submission of this single instruction.

¶70. This Court further stated the following in *Chase*:

> The other complaint concerns Instruction S-1. Chase wrongly argues that this instruction requires unanimity among the jurors on mitigating circumstances. Chase states that seven times during the instruction the jury was told it must make unanimous findings or unanimously agree. These refer to the *Enmund* finding, the aggravating circumstances, and the sentence of death. None remotely refers to mitigating circumstances.

> Chase also argues that when given the examples in mitigation and told that they could consider "any other circumstance brought to you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant," the jury would conclude that the mitigating factors also must be unanimously agreed on by the jury. This interpretation does not follow from the language in the instruction and there is not "a reasonable likelihood" that the jury will make this interpretation.

> As the State notes, a similar argument was addressed in *Hansen v. State*, 592 So.2d 114, 150 (Miss. 1991). The Court recognized that the instruction did not violate the holding in *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *McNeil v. North Carolina*, 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990) or *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The Court also noted that similar arguments had been addressed and rejected in *Turner v. State*, 573 So.2d 657, 668 (Miss. 1990); *Ladner v. State*, 584 So.2d at 760; *Willie v. State*, 585 So.2d at 681 and *Shell v. State*, 554 So.2d at 905. The *Hansen* Court concluded:

> In *Shell* the words "unanimous" or "unanimously" did not appear in the mitigating circumstances portion of the jury instructions but instead were found only in the aggravating circumstances portion. We held the instructions did not offend *Mills'* prohibitory injunction and that *Mills* contained no affirmative one.

> Such is the case now before this Court. The mitigating circumstances portion of the instruction does not contain "unanimous" or "unanimously." Only the aggravating circumstances part contains these words. No instruction says, implies or intimates to any reasonably literate juror

that he or she should await unanimity before considering a mitigating circumstance.

592 So.2d at 150.

There is no merit to Chase's claims even despite a failure to timely object. This claim is procedurally barred.

*Chase*, 645 So.2d at 859-60.

**¶71.** Chase now makes the essentially the same argument as was made during the appeal on the merits but couches his argument in terms of ineffective assistance of counsel, stating that trial counsel should have objected to Instruction S-1. Chase cites the same authority in support as that cited on direct appeal. As the Court has found that Instruction S-1 was not faulty, then trial counsel was not ineffective for failure to object to it.

### XIV. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO LANGUAGE IN THE LESSER INCLUDED OFFENSE INSTRUCTION WHICH PREVENTED THE JURY FROM GIVING EFFECT TO THAT INSTRUCTION.

**¶72.** Instruction C-2 was given without objection, and stated in part:

If you find that the State has failed to prove any one of the essential elements of the crime of capital murder, you must find the Defendant not guilty of capital murder and you will proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the essential elements of the lesser crime of murder.

. . . .

If the evidence warrants it, you may find the Defendant guilty of the crime of murder lesser than the crime of capital murder. However, notwithstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts and the law warrant a conviction of the crime of capital murder, then it is your duty to make such a finding uninfluenced by your power to find a lesser offense. *This provision is not designed to relieve you from the performance of an unpleasant duty; it is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime*.

¶73. Chase raised the following issue on his direct appeal: "The trial court's instruction to the jury on the manner of its deliberations was unduly coercive, in violation of the state and federal due process clauses, in that it forbade any consideration of the lesser included offenses until and unless the jury had unanimously agreed to acquit Chase of the greater charge." This Court found that in light of the other instructions granted by the circuit court, the giving of Instruction C-2 did not amount to reversible error. *Chase*, 645 So.2d at 851-52.

¶74. Chase now argues that his trial counsel was ineffective for failure to object to this instruction solely because of the italicized language. Chase argues that this was "warning language" which "prevent[ed] the jury from giving effect to that instruction." All the authority cited by Chase deals with when or if a lesser included offense instruction is appropriate. Here it was given. Chase cites nothing which states that this limited expression of the purpose of the instruction somehow inhibited

jurors who may have voted to convict for the lesser offense. It is equally as likely that the language in question would have encouraged jurors to vote for the lesser included offense when justified. Trial counsel was not ineffective for failure to object to Instruction C-2 for the reason alleged.

### XV. THE COURT FAILED TO CONDUCT ITS STATUTORILY REQUIRED SENTENCING REVIEW.

**¶75.** Chase finally argues that this Court failed in deciding his appeal on the merits to perform the review as required under Miss. Code Ann. § 99-19-105. A review of this Court's opinion in *Chase*, 645 So.2d at 861-62, shows that this is clearly not the case.

### CONCLUSION

¶76. Ricky Chase has failed to present a substantial showing of the denial of a state or federal right in his Application for Leave to File Motion to Vacate Judgment and Death Sentence. We find after thorough review that the Application should be denied.

**¶77. APPLICATION FOR POST-CONVICTION RELIEF DENIED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. BANKS AND McRAE, JJ., CONCUR IN RESULT ONLY.**