517 So.2d 1373 (1987)
William L. WILEY
v.
STATE of Mississippi.
No. DP-57.
Supreme Court of Mississippi.
November 25, 1987.
Rehearing Denied January 13, 1988.
*1376 Kenneth J. Rose, Jackson, James T. McDermott, James C. McKay, Covington & Burling, Washington, D.C., for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.

ON APPLICATION FOR LEAVE TO FILE AMENDED MOTION TO VACATE, OR SET ASIDE, JUDGMENT, CONVICTION AND SENTENCE OF DEATH
PRATHER, Justice, for the Court:
William L. Wiley, the petitioner, has filed an application for leave to file an amended motion to vacate or set aside judgment, conviction and sentence of death under the Mississippi Uniform Post-conviction Collateral Relief Act. Miss. Code Ann. § 99-39-1 et seq. (Supp. 1987). After Wiley's first capital murder trial, this Court affirmed the conviction, but reversed the sentence due to the prosecutor's comment, during closing argument to the jury, on reviewability of the death sentence. Wiley v. State, 449 So.2d 756 (Miss. 1984) (hereinafter Wiley I). Wiley was given another sentencing and again received the death sentence. On direct appeal, this Court affirmed the second sentence. Wiley v. State, 484 So.2d 339 (Miss. 1986), (Wiley II) cert. denied, ___ U.S. ___, 107 S.Ct. 304, 93 L.Ed.2d 278, reh. denied, ___ U.S. ___, 107 S.Ct. 604, 93 L.Ed.2d 604 (1986).

I.
The facts reveal the murder of J.B. Turner in DeSoto County in the early morning hours of August 22, 1981, as he and his daughter were closing the small convenience store which he operated. The assailant fired three times with a shotgun, killing Turner and seriously injuring his daughter. Several weeks later Wiley was arrested. He confessed to the robbery and the murder, and he led law enforcement officers to the place where he threw away a money sack.

II.
The petitioner assigns the following as grounds for his application for post-conviction relief:
A. Petitioner was deprived of his right to effective assistance of counsel at his 1984 sentencing trial (Wiley II).
*1377 B. Petitioner was deprived of his right to effective assistance of counsel at his 1982 guilt phase trial (Wiley I).
C. The prosecutor's exclusion of all potential black jurors from petitioner's guilt trial (Wiley I) and the exclusion of all but one potential black juror from petitioner's sentencing hearing creates a prima facie violation of Batson v. Kentucky and Griffith v. Kentucky.
D. The prosecutor's exclusion of all potential black jurors from petitioner's guilt trial (Wiley I) and the exclusion of all but one potential black juror from petitioner's sentencing hearing (Wiley II) violated the Equal Protection Clause of the Fourteenth Amendment.
E. Petitioner's sentence of death is tainted by racial bias and discrimination in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
F. The trial court erred by admitting incompetent, prejudicial, cumulative, and irrelevant evidence.
G. Prosecutorial misconduct deprived petitioner of a fundamentally fair trial at the sentencing stage and resulted in a sentence of death that was imposed under the influence of passion, prejudice and other arbitrary factors.
H. The Mississippi Supreme Court's appellate and proportionality review of the sentence of this case violated petitioner's rights.
I. Petitioner's constitutional rights were violated by the exclusion from the jury of persons opposed to the death penalty.
J. An invalid duplication of aggravating circumstances, when statutory mitigating circumstances are not present, involves an important question left open by Barclay v. Florida affecting all states with death penalty "balancing statutes".
K. The finding by the jury of the "especially heinous, atrocious and cruel" aggravating circumstances violated petitioner's constitutional rights.
L. The trial court's failure to grant petitioner's requested "mercy" instruction violated petitioner's constitutional rights.
M. The trial court erred in failing to instruct the jury regarding the burden of proof when weighing aggravating and mitigating circumstances.
N. The trial court erred in instructing the jury on the "capital offense committed during the commission of robbery" aggravating circumstance.
O. The trial court's instruction C-3 was unconstitutional and tantamount to a mandatory death sentence.
P. The trial court's instruction C-3 failed to give proper weight to general mitigating evidence.
Q. Mississippi's $1,000 limit on trial counsel reimbursement denies petitioner equal protection.
R. Mississippi's capital sentencing scheme is unconstitutional when viewed as a whole.

III.
Issues E, F, H, I, J, K, L and M were assigned as error on direct appeal and decided adversely to Wiley's position. This Court does not consider on a petition of this nature, issues raised and decided on the original appeal, even though theories for relief different from those urged at trial and on appeal are now asserted. Miss. Code Ann. § 99-39-21(2), (3); Johnson v. State, 511 So.2d 1333, 1336, (Miss. 1987). Dufour v. State, 483 So.2d 307, 311 (Miss. 1985). Wiley admits that the doctrine of collateral estoppel, or res judicata, applies to all these enumerated issues, except for his assertion under Issue F which alleges that the trial court erred in admitting into evidence testimony of the deceased victim's wife regarding the character of the victim. Wiley refers to the "intervening decision" of the U.S. Supreme Court in Booth v. Maryland, ___ U.S. ___, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). However, an intervening decision alone does not preclude a waiver under Miss. Code Ann. § 99-39-21, but can only except the case from the effect of the three-year statute of limitations in § 99-39-5(2) and the prohibition of second petitions in § 99-39-27(9).
*1378 Because this Court has considered all these points on their merits on the direct appeals by Wiley, Wiley cannot now be allowed to relitigate the same issues. Wilcher v. State, 479 So.2d 710 (Miss. 1985); Callahan v. State, 426 So.2d 801 (Miss. 1983). The issues were decided against Wiley's position, and he is not entitled to an evidentiary hearing on the same subject matter. On these points, the motion is denied as to Issues E, F, H, I, J, K, L, and M.

IV.
Issues C, D, G, N, O, P, Q and R were not raised on direct appeal or at the trial court. Thus, the claims are procedurally barred and not subject to further review by this Court, under Miss. Code Ann. § 99-39-21. Wilcher v. State, 479 So.2d 710 (Miss. 1985).
Additionally, claims which were available, but not previously asserted on direct appeal, are waived, and on this additional ground these claims are not subject to further review.
For the above reasons, the enumerated claims cannot not be litigated; an evidentiary hearing on Issues C, D, G, N, O, P, Q, and R is denied.

V.
Of the remaining viable issues for consideration on this application, Issues A and B relate to Wiley's claim that he was denied effective assistance of counsel. There is no waiver of these issues as the same counsel represented Wiley at both trials and on both direct appeals. See Read v. State, 430 So.2d 832 (Miss. 1983).
The basis of this claim is grounded in our Constitution; the right of an accused in a criminal prosecution to counsel is guaranteed in Art. 3, Sec. 26, Mississippi Constitution. A similar right is guaranteed by the Federal Constitution. U.S. Const. amends. VI and XIV. The right to counsel encompasses the right to effective counsel. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The legal standard by which this Court considers a claim of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, supra, the Court makes a two-pronged inquiry; first, a defendant must show that counsel's performance was deficient by identifying specific acts and omissions. Counsel's conduct, viewed as of the time of the actions taken, must have fallen outside of a wide range of reasonable professional assistance. The attorney's actions are strongly presumed to have fallen within that range, and a court must examine counsel's conduct without the use of judicial hindsight. Secondly, a defendant must show that the deficient performance was prejudicial, that is, that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Faraga v. State, 514 So.2d 295 (Miss. 1987); Johnson v. State, 511 So.2d 1333, 1339-40 (Miss. 1987). There is a strong presumption that counsel's decisions are sound trial strategy. Faraga, supra; Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985). The severity of the charge is part of the totality of the circumstances that must be considered, Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983), cert. denied, 429 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984), but a case of clear guilt supported by confessions and direct evidence is less likely to support a claim of ineffectiveness since the second (prejudice) prong of the Strickland test will be difficult to meet. Faraga, supra; Evans v. State, 485 So.2d 276, 281 (Miss. 1986).

VI.
Regarding this ineffective counsel claim at sentencing, the application may be generally summarized as allegedly deficient in the following general areas:

A. Enmund Intent Question:
Since March 29, 1983, the effective date *1379 of Miss. Code Ann. § 99-19-101(7),[1] the imposition of a sentence of death cannot be imposed upon a person unless there is a written finding by the sentencing jury of one or more of the following factors: that the defendant actually killed, attempted to kill, intended that a killing take place, or contemplated that lethal force would be employed. Failure of the jury to make such a separate written finding mandates a reversal of the death sentence. Pinkton v. State, 481 So.2d 306 (Miss. 1985). The sentencing jury in Wiley II did so find that Wiley actually killed, intended that the killing take place, and contemplated that lethal force would be employed.
Wiley now argues that his counsel made a decision to pursue a defense of lack of intent to kill, but counsel failed to follow up on this strategic choice.
This argument is without merit as counsel elicited evidence of Wiley's having "shot [his gun] up[ward]" to negate the argument that Wiley intended to kill.

B. Absence of Prior Record:
Likewise, defendant's counsel presented proof as to Wiley's absence of a criminal record, his cooperation in the investigation, his being a model prisoner, and the testimony of the victim's wife that Wiley was non-violent. Accordingly, this argument is without merit.

C. Investigation of and Failure to Present Mitigating Circumstances:
At the outset it should be noted that trial counsel has no absolute duty to present mitigating evidence. Mitchell v. Kemp, 762 F.2d 886 (11th Cir.1985). See King v. State, 503 So.2d 271, 274 (Miss. 1987). Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. This Court must apply a heavy measure of deference to counsel's judgments.
The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's other litigation decision. See United States v. Decoster, 624 F.2d [196] at 209-210 [(D.C. Cir.1979)].
Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695-6 (1984) (quoted in Burger v. Kemp, ___ U.S. ___, ___-___, 107 S.Ct. 3114, 3125-26, 97 L.Ed.2d 638 (1987) and in Leatherwood, 473 So.2d at 969).
The petitioner points out that mitigating evidence of all kinds must be permitted and that counsel has some ethical duty in this regard.
There was some mitigation by cross-examination, and there is an excellent argument that, strategically, it is safer to obtain mitigating evidence from the State's witnesses than to risk aggravating evidence from witnesses called by the defense. This Court cannot say that counsel's litigation decisions were unreasonable in this regard.

*1380 D. Psychological Examination:
Wiley next complains that his counsel made absolutely no investigation of psychological evidence. Wiley now submits psychological evidence showing, inter alia, a functional I.Q. of 73, lower academic I.Q., alcoholism, and genuine remorse for the crime.
Franks, Wiley's defense counsel, consistently portrayed Wiley as a non-violent, cooperative and easy-going person, having no intent to kill the victim. Franks was consistent in cross-examination on this point, and there is no indication that other witnesses would have added to the jury's consideration of mitigating circumstances. As trial strategy defense, counsel could have judged that the psychological report may have been harmful, as the defendant's tendency was to be a follower. However, this tendency contradicts his initiative in committing this crime, thereby making the report less credible. Also, Wiley's passive/aggressive personality disorder and compulsive personality are consistent with his actions. There was no insanity defense for these items to support.

E. Closing Argument:
The petitioner also points to counsel's failure to object to improper closing argument of the prosecutor at the sentencing phase. Yet Wiley never specifically supports his claims that the argument denied him a fundamentally fair trial. In light of the wide range of permissible argument, Howell v. State, 411 So.2d 772, 775 (Miss. 1982), it is this Court's opinion that the arguments are within proper perameters, and failure to object does not manifest ineffectiveness of counsel. Not only is such failure to object presumed to be strategic, but also the presumption has not been rebutted. Rather, it is noteworthy that trial counsel's performance at the first sentencing trial by objecting to improper argument obtained for this defendant a reversal and new sentencing hearing.

F. Aggravating and Mitigating Circumstances:
Wiley next argues that counsel failed to explain to the jury the inapplicability and/or insignificance of aggravating circumstances and how to weigh the aggravating and mitigating circumstances. Counsel actually made excellent arguments as to the aggravating circumstances, including the "heinous, atrocious and cruel" one, saying that all murders are in one sense of that type and that the prosecutor always said that he had never seen a crime like the one in the case he is trying at that time. Counsel avoided a detailed examination of Wiley's crime. Such an examination may well invite the prosecutor to rehash the circumstances of the crime. The remainder of the closing argument is an extensive exposition of a variety of mitigating evidence.
The petitioner further argues that counsel should have requested a presentence report in light of his failure to investigate mitigating evidence. The question here is counsel's competence in not investigating and presenting mitigating evidence. If this was a reasonable strategic choice, there was no need for seeking investigation by other means.

G. Batson Question:
In addition to counsel's failure to object to the prosecutor's closing argument, Wiley argues that counsel's failure to object to the exclusion of blacks from the jury constituted ineffectiveness of counsel. This argument stems from Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The Batson holding was that a prosecutor's use of peremptory jury challenges to exclude members of the defendant's race from the jury may be the basis for an equal protection claim of purposeful discrimination. In Griffith v. Kentucky, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States held that the substantial and procedural rights recognized in Batson were available in all criminal cases which as of April 30, 1986, were pending on direct review or were not yet final.
By a divided court, this Court has applied the directions presented by the Batson and *1381 Griffith decisions in death penalty cases before this Court. Thomas v. State, 517 So.2d 1285 (Miss. 1987); Jones v. State, 517 So.2d 1295 (Miss. 1987). Both of these cases represent factual situations where no contemporaneous objection by the defense counsel was made at the time the jury was impanelled, with this Court holding on petition for rehearing that the defendants Thomas and Jones had not preserved the Batson question.
However, in Williams v. State, 507 So.2d 50 (Miss. 1987), this Court held that the defendant Williams had made a prima facie showing of racial discrimination in the prosecutor's use of peremptory challenges to strike blacks from the jury. The Williams case was also tried prior to April 30, 1986, and this Court remanded the case to the circuit court to afford the prosecuting attorney the opportunity to make an explanation of his peremptory challenges. The Court will then determine whether there was a neutral, non-race based explanation for his challenges. Cf. Harper v. State, 510 So.2d 530 (Miss. 1987) (remanded for determination of whether prima facie case can be established).
In yet another decision, Caldwell v. State, 517 So.2d 1360 (Miss. 1987) (on remand from U.S. Supreme Court), this Court denied a Batson challenge because Caldwell's guilt phase was final before the Batson decision of April 30, 1986.
This Court holds that there is no merit to the claim of ineffectiveness of Wiley's counsel at the time of Wiley II because the U.S. Supreme Court did not speak on the issue in Batson v. Kentucky until after the date of the Wiley II sentencing hearing on April 30, 1986.

H. Miscellany:
Wiley also asserts but does not argue that the procedural bars as to issues D and N through R are due entirely to the ineffective assistance of counsel. None of these claims have merit and thus failure to assert them cannot constitute effective assistance of counsel.

VII.
Issue B relates to Wiley's claim that he was denied effective assistance of counsel at the guilt phase. He first argues that counsel should have moved for a change of venue before the guilt phase. Because defense counsel is under no duty to make such a motion, this would fall into the realm of trial strategy.
The fact that there has been widespread publicity in a county about a particular crime does not necessarily mean that a prudent defense counsel will want to have the case tried in another county. There must be a weighing of the odds. Most of the judges and trial lawyers of this state are aware of a statistical distinct disparity between counties in the willingness of juries to impose the death penalty. For some reason, also, some counties appear more "conviction prone" than others. We are also aware of defense lawyers who, in hindsight, have profoundly regretted a circuit judge sustaining their change of venue motion.
Faraga v. State, 514 So.2d 295, 307 (Miss. 1987). As to the instant case, Wiley has submitted several newspaper articles, only three of which are pretrial articles which mention William Wiley, and in an objective manner at that. Wiley submits no affidavits of knowledgeable persons stating that he cannot receive a fair trial in the county, although two such affidavits would have been required on a motion to change venue, thereby raising a rebuttable presumption. Foster v. State, 508 So.2d 1111, 1116 (Miss. 1987). Franks' affidavit merely states that there was some publicity, and Wiley's affidavit states that he thought the deck was stacked against him. Neither the newspaper articles, nor anything else, indicates that absent such relief petitioner may loose his right to a fair trial. See id. In light of the overwhelming evidence against Wiley, it is very unlikely that Wiley would have been prejudiced even if he could have obtained a change of venue.
Wiley's strongest argument as to the guilt phase is that trial counsel convicted him in his opening statement:

*1382 I know what proof the State's going to offer and I feel fairly certain based on the proof that the State is going to offer, that y'all are going to return a verdict of guilty. I want y'all to understand that from the beginning. I think that the State is going to bring forth evidence that's going to convince y'all beyond a reasonable doubt that William Wiley did shoot Mr. Turner.
Franks immediately thereafter stated that he was telling the jurors this so that they would not believe he was trying to hide anything when he made objection during the trial. Additionally, counsel stated that there are different types of homicide and that his client should not receive the most severe punishment for capital murder. Counsel then stated that the prosecutor would never prove intent, or even offer a shred of evidence of intent, and asked the jurors to wait until they had heard all the evidence and instructions before making a determination of whether or not to return a verdict of guilty on capital murder.
On cross-examination, counsel elicited testimony from Officer Stewart, who took Wiley's statement, that Wiley actually said, "I just shot up, but I definitely hit him" instead of "I just shot but I definitely hit him." On closing argument, defense counsel argued that because according to Wiley's statement, the decedent was reaching for his gun at a time when Wiley had not yet shot intentionally, the defendant was in real or apparent danger of losing his life. Thus, under the instructions of the court, counsel argued the crime was not capital murder and the jurors must return a verdict of not guilty. Note that a defense of lack of specific intent to kill alone would be of no help in the guilt phase of a felony murder trial.
While no attorney representing a client who has pleaded not guilty should concede in his oral argument to a jury that his client is in fact guilty of the crime charged in the indictment, when proof of certain facts is overwhelming, an attorney may find it strategically prudent to concede facts while still denying that his client is guilty of the crime charged in the indictment. Faraga v. State, 514 So.2d 295, at 307-308 (Miss. 1987). In Faraga, the attorney conceded guilt of simple murder when the crime charged was capital murder. A similar confession of guilt was not permissible in the instant case because there was no lesser included offense instruction and thus the jury's only options were guilty or not guilty of capital murder. An attorney may not stipulate to facts which amount to the "functional equivalent" of a guilty plea. Wiley v. Sowders, 647 F.2d 642, 649 (6th Cir.1981). In pleading "not guilty," the defendant reserves his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers, and he exercises his right to make a statement in open court that he intends to hold the State to strict proof beyond a reasonable doubt as to the offense charged.
This Court cannot say that the attorney's statement constituted ineffective assistance of counsel; it may have been trial strategy. As to strategical choice, this Court in Faraga noted that candor at the guilt phase may help the defendant in the sentencing phase because an attorney who, while sincerely trying to help his client, at the same time is open and honest with the jury is more likely to receive a sympathetic and open ear in his other arguments.
Finally, Wiley argues that trial counsel did not have the requisite legal experience to properly try a criminal case. Of course, the level of criminal trial experience is one factor to be considered in determining whether there was effective assistance of counsel, Daniels v. Maggio, 669 F.2d 1075 (5th Cir.1982), but inexperience does not as a matter of law make counsel ineffective. Callahan v. State, 426 So.2d 801, 804-805 (Miss. 1983). Trial counsel had had two and one-half years experience and had tried five criminal cases, none of which were capital cases, at the time of the first trial.
Thus, in conclusion, as to the claim of Wiley that his counsel was deficient in these specific acts and omissions viewed at the time taken by his counsel, this Court holds that counsel's actions fell into the *1383 permitted range of reasonable professional assistance under the facts of this case and the standards set forth in Strickland v. Washington, supra, and as guaranteed to the Mississippi and Federal Constitutions. A second sentencing jury has imposed the death sentence under conditions that afforded the defendant a fair trial.
Therefore, the Petitioner Wiley's request for relief under the Post Conviction Relief Act are found to be meritless on all grounds.
MOTION TO VACATE OR SET ASIDE JUDGMENT, CONVICTION AND SENTENCE OF DEATH DENIED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
HAWKINS, P.J., not participating.
NOTES
[1] This statute was passed in response to the decision of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed. 1140 (1982), but our consideration of the intent question is controlled by the Mississippi statute where our state remedy is independent and adequate.