# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KP-00133-SCT

*JAMES GATLIN*

*v.*

*STATE OF MISSISSIPPI*

## CONSOLIDATED WITH

## 94-KP-00493-SCT

*EUGENE FALLS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/05/94 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT ALLRED III |
| DISTRICT ATTORNEY | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 4/24/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS

James Gatlin was indicted during the August 1991 term of the Circuit Court of Walthall County for

capital murder by a habitual offender, conspiracy to commit capital murder by a habitual offender, and armed robbery by a habitual offender in the murder of John Duncan during the commission of armed robbery. Edwin Falls, one of Gatlin's co-defendants, was indicted for capital murder and conspiracy to commit capital murder in the same case during the same court term. On February 7, 1992, Gatlin and Falls both pled guilty to capital murder, and Falls pled guilty to a charge of conspiracy to commit capital murder. Gatlin also pled guilty to the charge of armed robbery, and the State agreed to drop the conspiracy charge and the habitual offender portion of his indictment on the charge of armed robbery. Gatlin was sentenced to life in prison for the charge of capital murder, and was sentenced to serve twenty years for the crime of armed robbery. Falls was sentenced to life in prison for committing capital murder and six years for conspiracy to commit capital murder.

On May 3, 1993, Falls filed his motion to vacate and set aside his guilty plea, conviction and sentence/petition for post-conviction collateral relief. Gatlin filed a similar motion on May 11. Judge Starrett ordered that the motions be treated as motions for post-conviction relief and set a joint hearing date for April 5, 1994. Eddie Taylor, a co-defendant of Gatlin and Falls, was also heard on his motion for post-conviction relief at the April 5 hearing. At the hearing, the only witnesses to testify were Taylor, Gatlin, and Falls. Judge Starrett issued his orders denying Gatlin's and Falls's motions for post-conviction relief on the same day as the hearing. Gatlin and Falls filed their notices of appeal to this Court, and Judge Starrett ordered that Gatlin and Falls be allowed to proceed in forma pauperis.

## STATEMENT OF THE LAW

### I.

### WHETHER THE TRIAL COURT ERRED IN NOT GRANTING APPELLANTS GATLIN AND FALLS THEIR MOTION TO VACATE THEIR PLEAS OF GUILTY BECAUSE THEY WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES AND RULE 3.03 OF THE MISS. UNIF. CRIM. R. CIR. CT. PRAC., INEFFECTIVE ASSISTANCE OF COUNSEL AND THE STANDARDS OF BOYKIN.

Gatlin and Falls claim that their guilty pleas were not knowingly, intelligently and voluntarily entered, because their attorneys failed to advise them of their constitutional rights, of what a guilty plea is, and of the consequences of pleading guilty. Gatlin asserts that he only pled guilty, because his attorney informed him that it would be futile to proceed to trial after his co-defendants pled guilty, and because his attorney erroneously told him that he should be released in ten years upon good behavior. Falls similarly argues that his attorney advised him that he would receive a ten-year sentence if he pled guilty, but would receive the death penalty if he went to trial. His initial testimony at the hearing was consistent with that assertion.

At the hearing, Eddie Taylor testified that Falls's attorney told Falls that he would be sentenced to ten years imprisonment if he plead guilty. However, on cross-examination, Taylor stated that Judge Pigott advised Falls of his rights before he plead guilty, and advised Falls that he should only plead guilty if he was guilty in truth and in fact. Taylor also testified that Falls told the judge that no one had promised him anything to cause him to plead guilty, that no one had threatened, abused, or mistreated him in any way, and that he realized the nature of the charges, the possible maximum

penalties involved, and the rights in the matter before pleading guilty.

Falls testified that he didn't remember Judge Pigott informing him of his rights. He did testify that Judge Pigott had advised him that he could be sentenced to death after pleading guilty. Falls also testified that he had made a confession before pleading guilty, and that he told the judge that he had not been threatened or abused and was not offered anything to cause him to plead guilty. The transcript from Falls's plea reveals that he told Judge Pigott that he understood the nature of the charges and the potential maximum penalties, that no one had threatened or abused him, that no one had promised him anything to cause him to plead guilty, and that he understood his rights as explained to him.

Gatlin testified that his lawyer had incorrectly informed him that he should be released after ten years if he pleaded guilty and submitted a letter into evidence from his attorney, Robert Underwood, in support of his claim. In his letter, Underwood told Gatlin that he had advised him of the law and possible sentences that he might receive, and that he might be released after ten years for good behavior. Gatlin further testified that although Judge Pigott informed him of the nature of his case and of his rights before pleading guilty, he did not fully understand the proceedings. He testified that he only went along with the guilty plea because he was in fear for his life, since his attorney had informed him that he would probably receive the death penalty if he went to trial after his co-defendants had pled guilty. However, the transcript from Gatlin's guilty plea reveals that Gatlin told Judge Pigott that he understood the nature of the charges and the potential maximum penalties, that no one had threatened or abused him, that no one had promised him anything to cause him to plead guilty, and that he understood his rights as explained to him.

Rule 8.04 of the Uniform Rules of Circuit and County Court Practice, replacing Rule 3.03 of the Mississippi Uniform Criminal Rules of Circuit Court states in pertinent part:

> *Voluntariness.* Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

U.R.C.C.C. 8.04.

> In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty.

***Gilliard v. State***, 462 So.2d 710, 712 (Miss. 1985) (citing ***Henderson v. Morgan***, 426 U.S. 637 (1976)). In ***Boykin v. Alabama***, 395 U.S. 238 (1969), the United States Supreme Court held that reversible error occurs where the trial court record does not reflect that the defendant voluntarily and knowingly entered a guilty plea.

In this case, the transcripts from Gatlin's and Falls's pleas reveal that both Gatlin and Falls were informed of the nature of the charges against them, their rights, the maximum and minimum penalties

associated with each charge, and the effects of pleading guilty. Both Gatlin and Falls informed Judge Pigott that they understood the charges, their rights, the potential penalties, and the effects of pleading guilty, and they responded to the judge's questions that they had not been intimidated or induced into pleading guilty by anyone. The only evidence presented to show that their guilty pleas were not knowingly and voluntarily entered was their own testimony at the hearing, all of which is refuted by the plea transcripts. Based upon this evidence, Judge Starrett did not err in finding that the testimony of Gatlin, Falls, and Taylor at the hearing was not credible. Sufficient evidence exists in the plea transcripts to show that Gatlin and Falls entered their guilty pleas knowingly and voluntarily.

## II.

## WHETHER THE APPELLANTS WERE DENIED EFFECTIVE ASSISTANCE OF COUNSEL WITHIN THE MEANING OF THE 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION PRIOR TO AND DURING THE PLEAS OF GUILTY HEARINGS.

Gatlin and Falls also assert claims of ineffective assistance of counsel. They assert that their attorneys failed to investigate the case, failed to interrogate witnesses and prepare a defense, and failed to properly explain their constitutional rights and the plea process to them. Gatlin also alleges that his attorney failed to investigate the violation of his rights after he informed his attorney that the police forced him to give statements. He further claims that his attorney attempted to elicit money from him for attempting to procure a lighter sentence. Falls additionally asserts that his attorney should have requested an incompetency hearing after becoming aware of Falls's limited education and lack of familiarity with court procedure.

On cross-examination, Taylor testified at the hearing that Falls responded to Judge Pigott's question before pleading guilty, stating that he was happy with his attorney's representation. The transcript from Falls's guilty plea reveals that he informed Judge Pigott that he was pleased with his attorney's representation, and that his attorney had advised him of the law and procedure in his case. At the hearing, Gatlin testified that his attorney did not file a discovery motion, did not engage in any discovery, and failed to investigate the charges against him. However, Gatlin's plea transcript reveals that he also informed the judge that he had a good attorney and that his attorney had advised him of the law and procedure in his case.

In order to make a successful argument for ineffective assistance of counsel, the criminal defendant must show that 1) his attorney's performance was deficient, and 2) that but for the attorney's deficiency, the outcome of the proceedings would have been different. *Wiley v. State*, 517 So.2d 1373, 1378 (Miss. 1987) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Here, the only evidence presented to support Gatlin's and Falls's claims of ineffective assistance of counsel was their own testimony at the hearing. However, this testimony is contrary to their statements when they entered their guilty pleas that they were pleased with their attorneys' representation and that their attorneys had informed them of the law and procedure in their cases. Again, Judge Starrett properly found that their altered testimony was not credible. The evidence presented at the hearing did not support a finding that the attorneys representing Gatlin and Falls exhibited any deficient performance. As a result, this assignment of error fails on the first prong of the *Strickland* test.

## III.

## WHETHER THE TRIAL COURT ERRED IN NOT APPOINTING THE APPELLANTS THE ASSISTANCE OF COUNSEL AT THEIR POST CONVICTION EVIDENTIARY HEARING.

Gatlin and Falls acknowledge that there is no right to counsel in post-conviction proceedings, but claim that failing to appoint counsel to them for their post-conviction hearing was an abuse of discretion. "[A] criminal defendant has neither a state nor federal constitutional right to appointed counsel in post-conviction proceedings." *Moore v. State*, 587 So.2d 1193, 1195 (Miss. 1991). "Therefore, the appointment of counsel at an evidentiary hearing is discretionary with the trial judge." *Id*. at 1196. Gatlin and Falls did not request that counsel be appointed to represent them until the day of the hearing. At that point, it cannot be said that Judge Starrett abused his discretion by refusing to postpone the hearing to obtain representation for Gatlin and Falls. No right to counsel exists for a post-conviction relief hearing, and we will not reverse based upon this assignment of error.

## CONCLUSION

Gatlin and Falls failed to prove at their post-conviction relief hearing that their guilty pleas were not entered knowingly and voluntarily. They also presented insufficient evidence to support their claims for ineffective assistance of counsel. The right to counsel does not attach to post-conviction proceedings, and Gatlin and Falls failed to request counsel until the day of the hearing, so no abuse of discretion occurred in the judge's refusal to appoint counsel to represent them at the hearing.

We find that Gatlin and Falls have failed to present any assignments of error requiring reversal by this Court.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**