# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00265-SCT

*STATE OF MISSISSIPPI*

*v.*

*WILLIAM HENRY PITTMAN a/k/a WILLIAM H. PITTMAN, JR.*

## ON MOTION FOR REHEARING

09/09/99

| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/97 |
| TRIAL JUDGE: | HON. T. FRED WICKER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL BY: WAYNE SNUGGS |
| ATTORNEY FOR APPELLEE: | MERRIDA COXWELL |
| DISTRICT ATTORNEY: | JOHN KITCHENS |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 9/2/1999 |
| MOTION FOR REHEARING FILED: | 09/10/1998 |
| MANDATE ISSUED: | |

EN BANC.

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The present case was considered by this Court in *State v. William Henry Pittman*, No. 97-CA-00265-SCT (decided August 27, 1998). After full consideration, we grant Pittman's Motion for Rehearing. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. In this case we are asked to consider the issues of whether the trial court exceeded the scope of its subject matter jurisdiction on remand, whether the doctrine of res judicata would bar a State claim of ineffective assistance of counsel where a similar claim failed in a federal court, and whether the trial court erred in finding that the

defendant was in fact provided ineffective assistance of counsel. We conclude that the trial court properly defined the issues on remand, that the State claim of ineffective assistance of counsel was not barred under the doctrine of res judicata, and that the trial court was not clearly erroneous in finding ineffective assistance of counsel. Accordingly, we affirm.

## I.

¶3. On July 7, 1989, William Henry Pittman pled guilty in the Circuit Court of Rankin County to five charges of photographing minors for the purpose of sexual gratification. Pittman was sentenced to five concurrent twenty-year sentences on these state charges. In addition, he was sentenced to concurrently serve a forty-one month sentence he had received on separate federal charges.

¶4. After serving his federal sentence, Pittman sought to have his guilty pleas set aside in both federal and state courts. The federal district court and the Fifth Circuit Court of Appeals rejected his claim.[1] However, the Rankin County Circuit Court granted Pittman's motion for summary judgment on May 27, 1992, based upon two separate grounds. The circuit court first found Pittman's pleas were not entered consistent with the procedure demanded by then Rule 3.03 of the Uniform Rules of Circuit Court Practice (now Rule 8.04), and therefore, were involuntary as a matter of law. Secondly, the circuit court found that Pittman was entitled to relief because he was advised by the presiding judge at the plea hearing, that a person pleading guilty to a "sex crime" had to be certified by a psychologist before being released on parole.

¶5. The State responded to the grant of relief by filing a motion for summary judgment on the issues of res judicata and collateral estoppel. The trial judge denied the State's motion. The State thereafter assigned three primary issues to this Court as error committed by the trial judge.

¶6. The first issue specifically dealt with whether a trial judge must verbally ask and receive a response to each and every question required by Uniform Criminal Rule of Circuit Practice 3.03. The second issue concerned whether a defendant who enters a guilty plea is entitled to parole information at or before entry of his plea. We reversed the summary judgment granted to Pittman on these two issues. We found "it [was] clear from the record that the defendant was fully advised of all elements of Rule 3.03(4) via a signed petition, and the judge discussed with the defendant his understanding of the petition...." *State v. Pittman*, 671 So. 2d 62, 64-65 (Miss.1996). Concerning issue two, we found that "[t]he State [was] further correct that a defendant who enters a guilty plea is not entitled to parole information at or before the entry of his plea." *Id.* at 65. We thereafter remanded the case "for a hearing on the remaining issues." *Id.* at 65. In doing so, we left undecided the third issue of whether the

principles of res judicata or collateral estoppel apply in this case.

¶7. On September 24-25, 1996, the Honorable T. Fred Wicker, sitting as special judge for the Rankin County Circuit Court, conducted an evidentiary hearing on what he perceived to be "the remaining issues." As a result of the evidentiary hearing, the trial court determined that Pittman received ineffective assistance of counsel when he entered his five guilty pleas and granted Pittman's Petition for Post-Conviction Collateral Relief. Aggrieved, the State perfected this appeal.

## II.
### a.

¶8. The State raises the issue of whether the trial court had jurisdiction to rule upon matters other than *res judicata*, and whether the trial court erred in refusing to rule on the issue of *res judicata*. According to Pittman, the trial court's ruling was consistent with this Court's mandate to conduct an evidentiary hearing concerning "the remaining issues" contained within his Petition for Post Conviction Relief that had not previously been ruled upon by the trial judge. Pittman is correct. A lower court's duty upon remand is to conduct further proceedings consistent with our opinion keeping in mind "the usual caveat that nothing said here [in this Court] should be taken as implying any view how the matter ought ultimately be decided." *Cooper v. Crabb*, 587 So. 2d 236, 244 (Miss.1991).

¶9. The State's right to appeal, however, was not forfeited by this Court's decision not to address the *res judicata* issue in *Pittman I.* The record reflects that the trial judge made two clearly reasoned rulings adverse to the State's *res judicata* claims prior to remand.[2] Any error contained within these rulings has clearly been preserved in the record for our review in this second appeal.

### b.

¶10. The State next raises the issue of whether Pittman is barred from relief by the principles of *res judicata*. This Court outlined the principles of *res judicata* and collateral estoppel in *Marcum v. Mississippi Valley Gas Co.*, 672 So. 2d 730 (Miss.1996). We revisited these same principles in *Norman v. Bucklew*, 684 So. 2d 1246, 1253 (Miss.1996), wherein we stated:

> The requirements for both collateral estoppel and its sister doctrine res judicata are found in *Dunaway v. W.H. Hopper and Associates, Inc.*, 422 So. 2d 749 (Miss. 1982): Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is

made....

*Norman*, 684 So. 2d at 1253 (quoting *Marcum*, 672 So. 2d at 751).

### 1. The Identity of the Subject Matter

¶11. The subject matter of this suit centers around the effectiveness of Pittman's trial counsel in his state and federal plea agreements. Pittman was prosecuted in state and federal court for similar yet separate crimes. While Pittman was represented in both cases by the same attorney during his plea bargain negotiations, the charges were distinct. The federal charges involved transporting a female over state lines for an immoral purpose. The state charges dealt with photographing a juvenile during sexual intercourse or simulation of intercourse. Since the charges are separate, claim preclusion should not be applicable in this case.

### 2. The Identity of the Cause of Action

¶12. An identity among causes of action exists when there is a commonality in the "'underlying facts and circumstances upon which a claim is asserted and relief sought from the two actions.'" *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So. 2d 742, 749 (Miss. 1996) (quoting *Riley v. Moreland*, 537 So. 2d 1348, 1354 (Miss. 1989)).

¶13. As discussed earlier, the claims against Pittman in federal court were separate and distinct from the state court claims. Ineffective assistance under the state claims should not have been argued in federal court since the charges, though similar, were separate in fact.

### 3. The Identity of the Parties

¶14. Res judicata applies only when the parties are "substantially identical." *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 72 (Miss. 1996)(citing *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416 (Miss. 1987)). The state urges us to apply the privity analysis adopted in the civil case of *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336 (Miss. 1997). *Little* quotes the comment to Section 83 of the Restatement of Judgments as follows:

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The statement that a person is bound . . . as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by . . . all or some of the rules of *res judicata* by way of merger, bar or collateral estoppel.

*Little*, 704 So. 2d at 1339 (quoting Restatement of Judgments § 83 cmt. (1942)).

¶15. The Fifth Circuit Court of Appeals' finding that the plea agreements were "interrelated" is insufficient to justify claim preclusion in this cause. For the purpose of stating our jurisprudence regarding party identity, the fact that these pleas were "interrelated" has no rational bearing on the determination of whether the parties were in privity. In *Little*, we found Mid-South, the defendant in the state action, and V & G, the defendant in the federal action, were both privies to a common bulk distributor. The manufacturer sold to a bulk distributor who repackaged and sold to Mid-South who in turn sold to V & G. *Little*, 704 So. 2d at 1339.

¶16. In the instant case, Pittman was charged with separate crimes, one a state crime and one a uniquely federal crime. The only common denominator was the defendant. The State of Mississippi was of course not involved in the federal prosecution of Pittman. It is apparent that the governmental interest in this case is being asserted by the State of Mississippi, as opposed to the federal government. While the state and federal governments cooperated in an attempt to secure Pittman's conviction, it is obvious the parties here were not identical. We find no privity here between the state and federal governments.

### 4. Identity of the Person

¶17. The focal point of Pittman's claim in this case and in federal court is the quality of representation afforded him by his attorney. It is therefore quite clear that the only persons subject to the dispute in both courts are Pittman and his attorney, Weaver Gore. However, further analysis of this issue is not essential due to our finding that the identity of the subject matter has not been met.

¶18. Having found that Pittman's claim is not precluded, we address the merits.

### c.

¶19. The State next raises the issue of whether the trial court erred by ruling that Pittman had been denied effective assistance of counsel. To determine if Gore's representation was ineffective, we must consider the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the defendant show: (1) specific acts and omissions evincing counsel's deficient performance and (2) prejudice to the defendant affecting the outcome of the proceedings. *Wiley v. State*, 517 So. 2d 1373, 1378 (Miss. 1987) (citing *Strickland,* 466 U.S. at 687). *Strickland* mandates analysis of the totality of the circumstances. *Wiley*, 517 So. 2d at 1378. And a strong but rebuttable presumption exists that counsel's conduct constituted reasonable professional assistance. *Frierson v. State*, 606 So. 2d 604, 608 (Miss. 1992). In a plea agreement, "[I]n order to satisfy the 'prejudice' requirement, the defendant must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶20. When reviewing an ineffective assistance of counsel claim, we will not set aside the finding of the lower court unless it is clearly erroneous. *Merritt v. State*, 517 So. 2d 517, 520 (Miss. 1987)(citing *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985); *Neal v. State*, 451 So. 2d 743, 753 (Miss. 1984)). We review findings of evidentiary fact under the same standard. *Id.* (citing *Norris v. Norris*, 498 So. 2d 809, 814 (Miss. 1986); *Carr v. Carr*, 480 So. 2d 1120, 1122 (Miss. 1985)).

¶21. Here, the trial court found that Pittman's attorney felt that the case was hopeless and therefore put all of his efforts into getting the best deal he could and advised Pittman that he had no defenses to the charges. The trial court stated that "[e]vidently Mr. Gore was convinced that Judge Goza had already made up his mind influenced by a media onslaught and political considerations." As a result of Gore's opinion that the case was hopeless, suppression and change of venue hearings which were commenced by Gore, were never completed. Gore failed to add a police officer's statement which may have bolstered his suppression argument and failed to hire a statistician, as suggested by Pittman, to legitimize his change of venue request.

¶22. The post-plea record is instructive regarding Gore's outlook on the chances of success, as communicated to Pittman. Direct examination was as follows:

Q: You said you told Mr. Pittman that you saw Judge Goza was going to overrule your motion to suppress. Did you talk to Judge Goza about overruling the motion to suppress?

A: I can't recall whether I did or not.

Q: Well, you did say that you told Mr. Pittman, 'I saw Judge Goza was going to overrule my motion to suppress.'

A: Yes, sir.

Q: Was that just a feeling that you had?

A: The way he was ruling during the - we spent about a half of day, I think, in the board of supervisors' room, as I recall. It's coming back, somebody got some third-hand information that said that Judge Goza said that he was going to overrule my motion, but I don't know whether that - maybe that's some -

* * *

Q: That is something that was communicated to Mr. Pittman at that time?

A: Yeah, I think Mr. Pittman told me that he had gotten information, maybe, from Sam Wilkins or something. I don't know. I have always considered Judge Goza one of the best, better circuit judges.

The discussion continued on cross-examination:

Q: Now did you not tell Mr. Pittman at some time during the change of venue or the suppression hearing that political pressure was one of the reasons why Judge Goza was ruling the way he was?

A: It was election year and I sort of had that in my mind.

Q: So you told that to Mr. Pittman?

A: Yes, sir.

Pittman testified that Gore's statements contributed to his decision to enter a guilty plea rather than face trial.

¶23. The trial court further found that Pittman's attorney provided ineffective assistance of counsel by advising Pittman, without doing any research on the issue, that he could not raise "mistake of age" as a defense. Gore admitted that he did not think that "mistake of age" was a defense, that he did not research the issue, and that he was unaware of *United States v. United States District Court*, 858 F.2d 534, 542-44 (9th Cir. 1988), which held that "mistake of age" could be raised as a defense to a federal charge of photographing minors involved in sexually explicit conduct. The trial court found that Pittman entered a guilty plea in substantial reliance on erroneous advice of counsel, and that, absent such erroneous advice, Pittman would have insisted on going to trial.

¶24. Pittman suggests the "mistake of age" defense could have been successfully pursued, and Gore's failure to explore this defense prejudiced him. The Supreme Court has previously addressed the issue in regard to the Protection of Children Against Sexual Exploitation Act, 18 U.S.C. § 2252. *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). Upon concluding that knowledge that the pornographic performer was a minor was an element to be proved under the Act, the Supreme Court held:

Our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them.

*Id.* at 70. *See Anderson v. State*, 381 So. 2d 1019, 1023 (Miss. 1980) (indicating that

knowledge of the victim's mental condition is an element of the crime of rape of a mentally incompetent female); ***Norman v. State***, 385 So. 2d 1298, 1301 (Miss. 1980); ***Dotson v. State***, 358 So. 2d 1321, 1322 (Miss. 1978) (reading a scienter requirement into Miss. Code Ann. § 97-3-7(1)(c) (Supp.1974)). The Supreme Court, in ***X-Citement Video***, further held that prior case law suggests "that a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." 513 U.S. at 78.

¶25. On the other hand, while other jurisdictions have accepted the mistake of age defense, Mississippi has rejected this defense in the only case in which it has been raised. *Collins v. State*, 691 So. 2d 918, 922-24 (Miss. 1997). ***Collins***, however, involved a charge of capital rape, not the specific crime with which Pittman was charged. Thus, the "mistake of age" defense certainly was not a frivolous one. While we do not intimate here an ultimate ruling on the issue, it should suffice to say that counsel's performance with regard to the issue was a legitimate source of concern for the circuit court in its effectiveness determination.

¶26. Pittman argues that he felt he had no choice but to enter a guilty plea because counsel advised him that he had no defenses, and that without a plea he could be spending seventy years or more in prison. By accepting the plea agreement, Pittman could minimize his sentence and avoid going to Parchman where he believed he would be raped and most likely killed. A belief which Pittman claims was shared by his counsel. Pittman testified that he would have elected to go to trial if he had known about the "mistake of age" defense. The trial court was entitled to accept that testimony.

¶27. The trial court also found that Pittman's attorney provided ineffective assistance of counsel by leading him to believe that he was only to serve five years. Pittman states that he was shocked when a parole official came to visit him shortly before sentencing. He alleges he thought there would be no parole since he would serve only five years in a federal prison.

¶28. Although Pittman testified at the plea hearing that he understood that he was being sentenced to more than five years, Pittman also testified at the hearing on his petition for post-conviction relief that his attorney encouraged him to commit perjury during the plea hearing. In making its determination, the trial court, having the opportunity to observe the witnesses, found that Pittman and the witnesses who testified on his behalf were more believable on this point. *See* ***Reddix v. State***, 381 So. 2d 999, 1007 (Miss. 1980). The trial court found that Pittman believed he was only to serve five years.

¶29. The findings of the trial court are not clearly erroneous and should not be disturbed on appeal.

## CONCLUSION

¶30. For the above and foregoing reasons, we affirm the grant of post-conviction relief by the Rankin County Circuit Court.

¶31. **AFFIRMED.**

 **PRATHER, C.J., SULLIVAN, P.J., McRAE, MILLS AND COBB, JJ., CONCUR. PITTMAN, P.J., SMITH AND WALLER, JJ., NOT PARTICIPATING.**

1. See *United States v. Pittman*, 909 F.2d 1481 (5th Cir.1990)(mem.).

2. The State first raised its res judicata argument in its May 27, 1992, motion for summary judgment. The trial judge overruled the motion finding:

> It appears to the Court that these were different charges. I believe one was in federal court, was transporting a female across state lines for immoral purposes, and the ones in state court had to do with the photographing of a female juvenile while in the act of either having intercourse or simulating intercourse. It appears to the court that these were different pleas at different times with respect to different charges dealing with different sovereignties, and I'm going to and do hereby overrule the motion of the state.

 The State made a second motion to dismiss based upon res judicata principles during Pittman's post conviction relief hearing. Once again, the trial judge ruled that Pittman was not barred from bringing his claims.